THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEPHEN A. DUNKER, Defendant-Appellant.

Fourth District    No. 4—91—0003

Opinion filed August 6, 1991.

Daniel D. Yuhas and Lawrence Bapst, both of State Appellate Defender's Office, of Springfield, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Kenneth R. Boyle and Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

Defendant Stephen A. Dunker was convicted of aggravated battery (Ill. Rev. Stat. 1989, ch. 38, par. 12—4(b)(3)) following a jury trial in Macon County, Illinois, on November 14, 1990. Defendant was sentenced on December 6, 1990, to a term of probation for 18 months conditioned on a term of imprisonment of 30 days in the Macon County jail. Defendant appeals, contending the State failed to prove him guilty beyond a reasonable doubt. We affirm.

Defendant's son, Brian, was in the first grade at Brush College School (Brush) in Decatur, Illinois, at the time of the incident. The complainant, Debbie Livingston, was Brian's teacher at Brush. In February 1990, Brian was transferred into Livingston's class from the other first-grade class at Brush because of a conflict between defendant and his wife and Brian's former teacher. At that time, Brian was academically behind the rest of the students in the first-grade class. Accordingly, Livingston began individualized lesson plans for Brian. On May 25, 1990, approximately two weeks before the end of the school year, Livingston determined that, although Brian had made significant progress in catching up with his classmates, he was still approximately two levels behind the other students in reading. Brian had completed the level IV textbook but had not passed the tests which would enable him to advance to level V. If he completed the level IV tests, he would then only be two levels behind the rest of the students for the next school year.

Livingston testified on May 25, 1990, she walked Brian to the school parking lot to speak with his father. Livingston stated she wished to ask defendant for permission to keep Brian after school for 15 or 20 minutes each day to enable him to complete the level IV tests. They reached defendant's car and Brian climbed into the backseat. Livingston stood near the driver's side door, facing defendant at a slight angle. Livingston testified she began talking

to defendant about how Brian needed to complete these tests in order to have the results placed in his permanent file so he would not have to repeat the entire fourth-level reader the next year. Livingston sought permission to keep Brian after school to achieve this goal. According to Livingston, defendant refused her permission to keep Brian after school because he had to pick Brian and his sister up at school and then go pick up his wife. Livingston suggested defendant pick his wife up first and then return to the school and pick the children up. This would give Livingston the time she sought to work with Brian. Defendant rejected this suggestion, stating that it would unnecessarily punish Brian's sister by causing her to stay after school also.

Livingston testified defendant became angry and began yelling at her. According to Livingston, defendant also began poking his finger in her face saying he was sick and tired of having to do the teachers' jobs, and that he then poked her in the chest. Defendant was also using profanity and commenting on other school employees. Livingston testified defendant poked her with his finger in her sternum, approximately four inches below the Adam's apple. Thereafter, Livingston testified defendant proceeded to grab the papers she held in her hand and fling them across the seat of his car. These papers were Brian's tests that she had planned to show defendant to explain why Brian needed to stay after school. Livingston gestured toward the papers, indicating to defendant that she needed them back because the tests had to be given by the teacher and then placed in Brian's permanent file. She testified defendant threatened to run her over if she did not move away from the car. Defendant then pulled away, causing Livingston to have to jump back to avoid being struck by the car. Livingston testified she began walking back toward the school when she heard another parent, who was also in the parking lot, yell to her to stay away from defendant.

Livingston testified she went into the principal's office and explained what happened. The principal called the school superintendent, who suggested Livingston call her union representative. Livingston also called the police and reported the incident. Finally, Livingston testified, as to the amount of pressure applied by the defendant when he poked her in the chest, it was "a pretty vigorous poke, enough for me to back away, enough for me to know, you know, there was a spot there, and, you know, that's the exact location of where it was."

On cross-examination, defense counsel posed the following question: "You were not insulted or provoked into some sort of fight or anything of that nature?" Livingston replied she was not. Livingston also denied defense counsel's implication that she did not become insulted or provoked until she called her union representative, who told her to report the incident to the police. Last, Livingston testified she left the parking lot crying, was shocked at the incident, and felt it was uncalled for since she had been working very hard with Brian.

Cherie Kupish testified she witnessed this incident between defendant and Livingston. She explained she was present in the parking lot adjacent to Brush to pick up her daughter, who was in the fifth grade at Brush. Kupish's van was parked diagonally from defendant's car with her front bumper being about three feet from defendant's rear bumper. Although there was a car parked in front of her van, it did not block her view of defendant's car because of the size difference between that car and her van. Kupish testified she could hear defendant yelling at Livingston and saw him thrust his finger in her face. She also testified she saw defendant poke Livingston in the chest approximately five or six times. Kupish stated Livingston then began walking back toward the school and that she was in tears.

Defendant's eight-year-old daughter, Sarah, and seven-year-old son, Brian, testified on his behalf. They both testified Livingston was shoving the papers into defendant's face, causing them to touch his nose and that defendant never poked Livingston in the face or chest. Sarah testified defendant carefully placed the papers on the seat next to him, while Brian testified defendant merely took the papers away.

Defendant testified he went to pick his children up from school on May 25, 1990, at approximately 3:05 p.m. He stated he also had to pick up his wife, who got out of her school at 3 p.m. but would first pick the children up. Defendant testified Livingston approached his car and stood right outside the driver's window. According to defendant, Livingston began saying Brian was way behind on his schoolwork and needed to do the tests. Defendant testified Livingston shoved the papers in his face. Defendant explained he was having trouble understanding what Livingston was saying to him and he questioned her waiting until the school year was almost over to tell him Brian was behind in his schoolwork. Defendant testified Livingston said she had been telling him all along Brian was behind in his work and needed to do these tests.

Defendant stated Livingston continued to shake the papers in his face, which made him think she meant for him to take them. He grabbed the papers from her and laid them on the seat next to him. Defendant testified Livingston went berserk and leaned over, reaching into the car with her left hand to grab the papers. However, she could not reach them and defendant said he would return the papers the following day. Defendant testified he told Livingston he did not have time to argue with her because he had to go pick his wife up. Defendant asked Livingston to get away from the car so he could leave. Defendant testified he did not touch Livingston in any manner but that he may have grabbed the papers a little too fast. Defendant proceeded to pick up his wife and then they, along with Brian, went back to the school to talk to the principal about the situation and return the papers.

During rebuttal, Kupish testified Livingston never reached into the defendant's car, nor did she wave or shake the papers in defendant's face. Rather, Kupish stated Livingston held the papers and defendant grabbed them from her. Kupish testified that, except when defendant grabbed the papers from Livingston, they made no other contact with defendant's body.

Livingston testified, on rebuttal, that she did not reach into defendant's car to try to get the papers back from him. She stated she may have touched the windowsill of the car but she denied shaking the papers in defendant's face or touching his nose with them.

The jury returned a guilty verdict, and defendant was sentenced to 18 months' probation conditioned upon a 30-day term of imprisonment in the county jail. Defendant filed a post-trial motion on December 6, 1990, which was denied. Defendant then filed a notice of appeal on January 2, 1991.

Defendant contends his conviction must be reversed because the State failed to prove beyond a reasonable doubt that Livingston was insulted or provoked when he poked her with his finger. The State responds the evidence was sufficient for the jury to find Livingston was insulted or provoked by defendant's poking.

■ Section 12—4(b)(3) of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, par. 12—4(b)(3)) provides:

"(b) A person who, in committing a battery, commits aggravated battery if he either:

\* \* \*

(3) Knows the individual harmed to be a teacher or other person employed in any school and such teacher or other em-

ployee is upon the grounds of a school or grounds adjacent thereto, or is in any part of a building used for school purposes."

A person commits a battery when he either intentionally or knowingly, and without legal justification, makes physical contact of an insulting or provoking nature with an individual. *People v. Wilkinson* (1990), 194 Ill. App. 3d 660, 664, 551 N.E.2d 327, 329; Ill. Rev. Stat. 1989, ch. 38, par. 12—3(a).

The credibility of witnesses and the weight to be given their testimony are matters for the jury to determine and, unless its determination is manifestly against the weight of the evidence, it will not be disturbed on appeal. (*Moran v. Lala* (1989), 179 Ill. App. 3d 771, 534 N.E.2d 1319.) The relevant question is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.

■ Defendant contends Livingston testified she was not insulted or provoked by the contact with defendant's finger. Livingston did not testify that she was not insulted or provoked, but rather testified she was not provoked or insulted "into some sort of fight." Kupish testified Livingston left the parking lot in tears. Livingston testified she was crying, was shocked by defendant's behavior, and believed it was uncalled for.

As the trial court noted at the hearing on defendant's post-trial motion, the issue raised by defendant involves a question of fact and credibility of witnesses which was passed upon by the jury. There was sufficient evidence for the jury to conclude Livingston was insulted or provoked by defendant's touching.

For the foregoing reasons, the decision of the trial court is affirmed.

Affirmed.

GREEN and KNECHT, JJ., concur.