2020 IL App (2d) 170938-U
No. 2-17-0938
Order filed February 27, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Kane County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 17-CF-731 |
| | ) | |
| STEVEN HENSHALL, | ) | Honorable |
| | ) | David P. Kliment, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Burke and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The State proved defendant guilty beyond a reasonable doubt of aggravated battery based on insulting or provoking contact, as the testimony and the casino's surveillance video showed that defendant repeatedly pulled the arm of and struck his elderly wheelchair-bound mother.

¶ 2    Defendant, Steven Henshall, appeals from the judgment of the circuit court of Kane County finding him guilty of three counts of aggravated battery based on insulting or provoking contact (720 ILCS 5/12-3.05(c), (d)(1), 12-3.2(a)(2) (West 2016)).  Because the evidence was sufficient to prove defendant guilty beyond a reasonable doubt, we affirm.

¶ 3                                I. BACKGROUND

¶ 4     Defendant was indicted on one count of aggravated battery based on physical contact of an insulting or provoking nature against a victim over 60 years old (720 ILCS 5/12-3.05(d)(1) (West 2016)), one count of aggravated battery based on physical contact of an insulting or provoking nature in a public place of accommodation (720 ILCS 5/12-3.05(c) (West 2016)), and one count of aggravated domestic battery based on physical contact of an insulting or provoking nature (720 ILCS 5/12-3.2(a)(2) (West 2016)).[1] Defendant opted for a jury trial.

¶ 5     The following facts were established at the trial. At about 9:50 p.m., on April 13, 2017, defendant and his 84-year-old mother, Marcia Henshall, were in the player's club area of the Grand Victoria Casino in Elgin. Marcia was in a wheelchair.

¶ 6     Pamela Shreve, a food and beverage manager at the casino, saw defendant and Marcia near a kiosk that provided coupons for the casino restaurants. Defendant was going through Marcia's purse. In doing so, he grabbed Marcia's arm, pulled on her shirt, and pulled her hand out of her purse. Defendant took Marcia's wallet from her purse and struck her with the wallet. Shreve described defendant as very impatient with Marcia. Shreve believed that, because Marcia's hands were shaking, she was upset by defendant's conduct. Shreve could not hear any conversation between defendant and Marcia. Shreve contacted Michael Hogeland, a casino security officer.

¶ 7     When Shreve contacted him, Hogeland was in an information booth about 50 feet from the kiosk. He observed defendant yelling at Marcia, who seemed agitated. Hogeland saw defendant grab Marcia by the arm.

---

[1] Defendant was also indicted on the same three versions of aggravated battery, but based on bodily harm. Before trial, the State dismissed those three charges.

¶ 8    Hogeland walked up to defendant and Marcia and asked if there was a problem.  Defendant answered that his mother could not find her player's card.  Hogeland told defendant that if there were any more problems he would ask both defendant and Marica to leave, and defendant responded that they would see about that.  According to Hogeland, Marcia seemed like she was crying or holding back tears.  Hogeland admitted that he did not include that fact in his written report.

¶ 9    Hogeland immediately notified his supervisors and the Illinois Gaming Board about the incident.  According to Hogeland, the Gaming Board reviewed video of the incident and called the Elgin Police Department.  In the meantime, defendant and Marcia entered one of the casino restaurants.

¶ 10    Officer Daniel McNanna of the Elgin Police Department was dispatched to the casino to investigate a report of a domestic battery.  He met with Shreve and Hogeland, reviewed a video of defendant and Marcia interacting near the kiosk, and located defendant and Marcia having dinner at one of the restaurants.  Officer McNanna asked defendant to step away from the table so they could talk.  According to Officer McNanna, defendant had been drinking and was agitated.  After speaking with defendant, Officer McNanna arrested him.  Officer McNanna did not see any marks, bruises, blood, or other injuries on Marcia.

¶ 11    Marcia testified that she recalled being at the casino with defendant.  She had been unable to locate her player's card, so she and defendant looked for it.  She did not remember defendant grabbing her.  At some point, they found the card and went into a restaurant.

¶ 12    Marcia could not recall defendant smacking her hand or pulling her into the table during dinner.  She denied feeling provoked or insulted by defendant.  She did not ask anyone to call the police and was surprised when they arrived.

¶ 13    Two videos were played for the jury.  One showed the incident near the kiosk.  Defendant could be seen grabbing Marcia's arm several times.  He also could be seen grabbing and pulling on her collar, throwing a cellphone at her upper body, and striking her with her wallet.  Marcia could be seen several times raising her left arm in a defensive posture.  Defendant's facial expressions and actions showed that he was very annoyed and upset with Marcia.

¶ 14    The other video showed defendant and Marcia dining.  During dinner, defendant can be seen multiple times reaching under the table and grabbing and pulling on Marcia.  Twice defendant threw napkins in Marcia's face.  Again, throughout dinner, defendant appeared to be extremely annoyed and upset with Marcia.

¶ 15    A recording of a telephone call between defendant and Kimberly Gage, made while defendant was in jail, was admitted.  During the call, defendant told Gage that he needed her to do something.  He explained that Marcia had to go on a vacation to her brother's home and, if she did, the case would go away.  He told Gage that he would file a speedy-trial motion and that Marcia needed to go to her brother's home in about 80 days.  He urged Gage to meet with Marcia and arrange the trip.  He asked Gage if she understood his plan.  He added that Marcia should not have any contact with the police.

¶ 16    The jury found defendant guilty of all three aggravated-battery counts.  Defendant filed a motion for a new trial, in which he contended, among other things, that he was not proved guilty beyond a reasonable doubt.  Following the denial of the posttrial motion, the trial court merged the three convictions and sentenced defendant to 30 months' probation.  Defendant, in turn, filed this timely appeal.

¶ 17                                                    II. ANALYSIS

¶ 18     On appeal, defendant contends that the State failed to prove beyond a reasonable doubt that his physical contact with Marcia was insulting or provoking.

¶ 19     When a defendant challenges the sufficiency of the evidence supporting his conviction, the inquiry is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Fultz*, 2012 IL App (2d) 101101, ¶ 42 (citing *People v. Collins*, 214 Ill. 2d 206, 217 (2005)).  It is the function of the trier of fact to weigh and resolve conflicts in the evidence and to draw all reasonable inferences therefrom.  *Fultz*, 2012 IL App (2d) 101101, ¶ 42.  The appellate court will reverse a conviction only where the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt.  *Fultz*, 2012 IL App (2d) 101101, ¶ 42.

¶ 20     In considering whether a defendant made contact of an insulting or provoking nature, the trier of fact should consider the context in which the contact occurred.  *Fultz*, 2012 IL App (2d) 101101, ¶ 49 (citing *People v. Wrencher*, 2011 IL App (4th) 080619, ¶ 55).  Indeed, contact that does not injure the victim can be insulting or provoking depending on the context, including the parties' relationship.  *People v. DeRosario*, 397 Ill. App. 3d 332, 334 (2009).  Even if the victim does not testify that she felt insulted or provoked, the trier of fact may still find that the contact was insulting or provoking.  *Fultz*, 2012 IL App (2d) 101101, ¶ 49.

¶ 21     Here, there was ample evidence to support a finding that defendant physically contacted Marcia in an insulting and provoking manner.  The context involved a younger man and an 84-year-old wheelchair-bound woman in a public place.  Repeatedly striking an 84-year-old woman sitting in a wheelchair in a public place is certainly both insulting and provoking.  Similarly, repeatedly pulling her under the table and throwing napkins in her face during dinner further

evinced that the contact was insulting and provoking. Additionally, defendant exhibited behavior in the casino videos that showed that he was clearly upset and annoyed with Marcia. As the trial court found, defendant's demeanor showed that the physical contact was both insulting and provoking. Further, defendant's conduct was clearly visible to employees and patrons of the casino, which enhanced its insulting and provoking nature.

¶ 22 Additionally, Shreve testified that she believed Marcia was upset because her hands were shaking. Hogeland testified that Marcia appeared agitated by defendant's conduct and that she was holding back tears. Although Hogeland did not include that fact in his written report, the jury could disregard the omission and believe Hogeland's testimony. Further, Marcia's reaction to defendant's behavior, in raising her arm to defend herself, further showed that the contact was both insulting and provoking.

¶ 23 Defendant points to Marcia's testimony that she did not feel insulted or provoked. Proof of insulting or provoking contact, however, does not depend upon the victim's testimony. *Fultz*, 2012 IL App (2d) 101101, ¶ 49. Further, the jury was free to reject Marcia's denial and find, based on the other evidence, that the contact was insulting or provoking. See *People v. Dunker*, 217 Ill. App. 3d 410, 415 (1991) (although victim testified that she was not insulted or provoked into a fight, other evidence supported finding that contact was insulting and provoking).

¶ 24 Finally, the phone call between defendant and Gage showed defendant's consciousness of guilt.[2] See *People v. Gacho*, 122 Ill. 2d 221, 247 (1988) (evidence is admissible to show any attempt by a defendant to conceal or, by threat or otherwise, to suppress evidence or otherwise obstruct an investigation); see also *People v. Gambony*, 402 Ill. 74, 80 (1948) (attempted intimidation of a witness is admissible to show consciousness of guilt). Defendant directed Gage

---

[2] Defendant does not challenge the admission of the recording of the phone call.

to arrange to have Marcia go to her brother's home so that she would not testify and the case would go away. He added that Marcia should not have any contact with the police. Those statements, reflecting defendant's guilty conscience, further showed that he committed the charged offenses.

¶ 25    When viewed in the light most favorable to the State, the evidence sufficiently supported the finding that defendant's physical contact of Marcia was both insulting and provoking. Thus, defendant was proved guilty beyond a reasonable doubt.

¶ 26                           III. CONCLUSION

¶ 27    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 28    Affirmed.