# Illinois Official Reports

## Appellate Court

---

### *People v. Ward*, 2021 IL App (2d) 190243

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEFFREY N. WARD, Defendant-Appellant. |
| District & No. | Second District No. 2-19-0243 |
| Filed Rehearing denied | July 7, 2021 July 30, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 18-CM-1380; the Hon. Clayton L. Lindsey, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Jeffrey N. Ward, of Geneva, appellant *pro se*. Joseph H. McMahon, State's Attorney, of St. Charles (Patrick Delfino, Edward R. Psenicka, and Barry W. Jacobs, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE BIRKETT delivered the judgment of the court, with opinion. Justice McLaren concurred in the judgment and opinion. Justice Zenoff concurred in part and dissented in part, with opinion. |

**OPINION**

¶ 1         Defendant, Jeffrey N. Ward, appeals his conviction of the offense of domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2018)) following a jury trial in the circuit court of Kane County. Because the trial court erred in denying defendant's motion for a directed verdict, we reverse defendant's conviction.

¶ 2                                      I. BACKGROUND

¶ 3         On June 1, 2018, defendant was involved in a verbal altercation with police officers at the scene of a traffic accident involving his 18-year-old son, Matthew. As defendant was arguing with one of the officers, defendant's wife, Leslie Ward, stepped between defendant and the officer. Defendant pushed Leslie to the side and continued to argue. Defendant was arrested and charged by complaint with two counts of domestic battery. Count I alleged that defendant knowingly caused bodily harm to his wife, Leslie O. Ward, by pushing her. 720 ILCS 5/12-3.2(a)(1) (West 2018). Count II alleged that defendant made contact of an insulting nature with Leslie O. Ward by pushing "her with both hands in her shoulder and neck area, causing her to lose her balance and take a few steps back." See 720 ILCS 5/12-3.2(a)(2) (West 2018). The complaint was signed by Officer Matthew Hann. Leslie refused to cooperate and insisted that her husband did nothing wrong.

¶ 4                  A. Assignment to a Judge From the Fifteenth Judicial Circuit

¶ 5         The chief judge of the Sixteenth Judicial Circuit requested that a judge from another judicial circuit be assigned to hear defendant's case. On June 4, 2018, our supreme court ordered the chief judge of the Fifteenth Judicial Circuit to assign a judge from that circuit to preside over defendant's case. Judge Redington was assigned to hear the case. Defendant moved for substitution of judge. 725 ILCS 5/114-5(a) (West 2018). Judge Clayton Lindsey from the Fifteenth Judicial Circuit was assigned to preside over the proceedings, all of which took place in Kane County.

¶ 6                                    B. Motion to Dismiss

¶ 7         Prior to trial, defendant filed a motion to dismiss, arguing that Leslie told the arresting officer, Sergeant George Carbray, that the "push" did not constitute domestic battery and that "[defendant's] arrest was just another act of harassment against her family from the Geneva Police Department." A copy of Leslie's written statement from June 1, 2018, was attached as an exhibit. The State's response argued that the victim's desire to drop charges is not grounds for dismissal. The trial court denied defendant's motion.

¶ 8                               C. State's Motion *in Limine*

¶ 9         Also prior to trial, the State filed a motion *in limine* to bar Leslie from testifying that she "consented to the physical contact." The State argued that Leslie's "consent" has no bearing on whether the defendant committed a domestic battery on June 1, 2018, because, according to *People v. Ford*, 2015 IL App (3d) 130810, "consent is neither a statutory nor a common law defense to domestic battery." Throughout the prosecution of the case, the State posited that the fact that Leslie did not feel insulted or provoked was irrelevant. The State argued that allowing

Leslie to testify that she consented would be "misleading to the jury as it would be misstating the law." The trial court barred defendant from arguing that "the alleged victim consented directly or indirectly to the touching that is alleged to have occurred in this matter." The trial court ruled that Leslie or other witnesses could testify as to "what [they] observed or experienced related to the incident in question." The trial court noted that *Ford* does state that "consent is a defense to what would otherwise be a minor sort of offensive touching; medical procedures and batteries that are incidents to participating in certain sporting events," but it stated that, "by definition, a domestic battery is not a minor sort of offensive touching."

¶ 10                                    D. Trial Testimony

¶ 11        Prior to trial, the State nol-prossed count I, domestic battery alleging bodily harm. At trial, Barbara Stilling testified that on June 1, 2018, at about 6:30 p.m., she was involved in a minor traffic accident while heading west on Keslinger Road in Geneva. She was rear-ended by a vehicle driven by Matthew. Stilling called the police, and Hann responded to the scene. The vehicles were moved to a parking lot. Defendant arrived on the scene and spoke to his son first and then to Officer Hann. Stilling heard defendant say "something to the effect like 'I see a f*** a*** here and it's you,' " referring to Hann. A short time later, Carbray arrived. Stilling said that, while defendant was speaking to Carbray, defendant leaned forward and was "getting in [Carbray's] face." Stilling saw Leslie come between the defendant and Carbray "to try to diffuse the situation." Leslie said something, but Stilling did not hear what she said. Stilling then saw defendant use his right hand to push Leslie off to the right, either on the "neck or upper shoulder." Leslie "stumbled a little bit but did not fall." Stilling did not hear "defendant say anything to anyone present at the time." At the end of Stilling's direct examination, the prosecutor asked, "When you observed the defendant shove Mrs. Ward, how did that make you feel?" Stilling responded, "I was surprised, startled that it actually happened." On cross-examination, Stilling added that she was "a little shocked" to see defendant move his wife out of the way. Stilling acknowledged that, when she spoke to Carbray, she never told him that she was "startled" or "shocked" but that she may have used the word "surprised." At the time of the push, Leslie was facing defendant, and her back was to Carbray.

¶ 12        Leslie testified that she is defendant's wife and lives with him in their Geneva home, along with their two sons, aged 19 and 22 at the time of trial. On June 1, 2018, Matthew, their younger son, texted and called his parents to tell them that he had been involved in a car accident. Defendant and Leslie drove separately to the scene. Defendant left their home first. Leslie let the family's dogs in and then left to drive to the scene. When Leslie arrived, defendant was speaking to a police officer. He was not happy. Leslie stated that the Geneva Police Department had "not treated him particularly well." Leslie got in between defendant and the officer he was speaking to. Leslie did not recall if she said anything to defendant but stated that she might have placed her hand on his chest. She said that defendant never told her to "shut up." When asked whether defendant shoved her "out of the way," she responded "No" and said that the contact was similar to passing someone in a hallway and "you go, okay, you need to move." Leslie said that defendant's attention was on the police officer in front of him and that he "just moved [her] out of the way." He did so quickly but held on to her so she would not fall. The following exchange then took place:

"PROSECUTOR: Do you want to be here testifying today?

LESLIE WARD: Does anybody?

- 3 -

PROSECUTOR: I need an answer, ma'am.

LESLIE WARD: I would prefer to be elsewhere. I think this is a complete farce because there is nothing, nothing, that [defendant] has ever done to me to hurt me. Ever. He has not insulted me. He has never hurt me. He supports me. He has done an incredible job helping me do what I do now."

Leslie testified that, when defendant was arrested, she expressed her "displeasure to the police officers" and she "wrote a statement indicating what had happened." Leslie said that she stepped between defendant and the officer because, whenever defendant is involved "with the Geneva police, they tend to treat him very poorly and unfairly" but they do not tend to do anything to her.

¶ 13    On cross-examination, Leslie testified that she and defendant had been married for 27 years. Leslie is a middle school teacher and has her master's degree. She testified that she was not insulted, shocked, or provoked when defendant moved her out of the way. Leslie testified that, after defendant pushed her, the officer said "[t]hat was domestic abuse" and that he was a "mandated reporter." Leslie told him that as a teacher she was also a mandated reporter and that what defendant did should not be reported. She told the police that she did not want defendant arrested and that she was "very unhappy with the way he was being treated." Leslie prepared a written statement "right after [the incident] happened." She made it very clear to the police that she was unhappy with the whole ordeal. The police officer asked her if she would like to make a statement, and she said that she would. Defense counsel showed Leslie a copy of her written statement, which she identified. Defense counsel moved to admit her statement into evidence. The prosecutor objected, stating, "[y]ou cannot admit a consistent statement into evidence." Defense counsel responded that the victim's statement in a domestic battery case at the "time of the alleged incident is always relevant as to whether or not the contact was insulting or provoking." Defense counsel argued that Leslie's response was relevant "as to whether or not she perceived the contact as being insulting or provoking." The trial court sustained the State's objection.

¶ 14    Hann testified that he responded to the accident involving Stilling and Matthew. When defendant arrived on the scene, defendant called Hann a "f*** a***." Hann testified that defendant was "highly agitated" and spoke in an "angry," "elevated" tone. Hann recognized defendant and Leslie, who arrived shortly after defendant. After Sergeant Carbray arrived, Hann continued his traffic crash investigation. Hann testified that he heard Carbray ask Leslie how old her son was and Leslie's response that he was 18. At that point, Hann "observed [defendant] scream [for her to] shut up and [shove Leslie] with both of his hands." Hann said that Leslie lost her balance and took several steps to stay on her feet. Hann heard Carbray tell defendant that "he just committed a domestic battery[,] and he was placed under arrest at that time." Hann said that Leslie was not cooperative and that an officer with the Geneva Police Department signed a complaint against defendant. He explained that this "is standard protocol at the Geneva Police Department." Over defense counsel's objection, Hann testified that "[t]here's a hesitancy for the victim to sign complaints against the offender" and "that's what happened in this case."

¶ 15    On cross-examination, Hann acknowledged that he knew that defendant was a vocal critic of the Geneva Police Department. Hann acknowledged that he did not document in his report that defendant was aggressive, upset, or angry but noted that he did use the word "agitated" to describe defendant's demeanor. Hann testified that he was one of the responding officers to

the Ward home when the house and defendant's truck were firebombed. Hann testified that the Geneva Police Department does not equip its squad cars with in-squad cameras and the police officers are not equipped with body cameras.

¶ 16 Carbray, an 18-year veteran of the Geneva Police Department, testified that he was called away from the scene of another accident to respond to the scene involving Stilling and Matthew. He said that he went there because defendant "showed up on the scene and was agitated." Defendant looked at Carbray and said something to the effect of, "I can't believe that this f*** a*** is here." Carbray was asked if he knew defendant, and he replied that he did and that he handled calls with defendant on "countless occasions," totaling at least a dozen incidents. The prosecutor asked Carbray if he liked defendant, and Carbray responded, "No." When asked, "Why not?" Carbray responded, "I believe he's a bully who creates a lot of issues and tries to manipulate people." According to Carbray, defendant was upset both because his son was involved in an accident and because Carbray was at the scene. Carbray characterized defendant as "unhinged" to the point of "physically shaking." Carbray acknowledged that he raised his own voice while telling defendant to calm down. He stated that he told defendant that he was interfering in the investigation and that his son is "18 who is an adult." Carbray said that it would not have been a problem for defendant to be at the scene if he had been "more calm" and that the problem was defendant's "attitude." Carbray testified that Leslie was standing next to him when he asked her how old her son was and that, "as soon as she said 18, Mr. Ward took both hands[,] physically pushed her on the shoulder and neck area, and then she went a couple of steps to the side and regained her balance." Carbray "immediately told Mr. Ward that what he did was a domestic battery and he cannot push his wife." Carbray stated that he did not immediately arrest defendant. As the "back and forth" between them continued, defendant did not calm down, so Carbray placed defendant under arrest. Carbray testified that both state law and Geneva Police Department policy required that, when a police officer "firsthand observes a domestic violence act occur, we are immediately to protect the victim by making an arrest." He stated that Leslie did not want her husband arrested but that it had "no bearing" as to whether he was obligated to make an arrest. Over defense counsel's objection on relevance grounds, Carbray testified that police officers often sign complaints in domestic violence cases "[b]ecause the spouse requires something from the other spouse, be it housing, money, they want to rectify, they don't want to ruin whatever is going on inside the family for the kids. So often that can be the case."

¶ 17 Carbray denied having a vendetta against defendant and believed that he had treated defendant fairly. At the police department, Carbray had a "lengthy discussion" with defendant about "what constituted domestic violence." He told defendant that pushing his wife with two hands is domestic violence. Defendant said that he did push his wife. Carbray clarified that he arrested defendant "because he committed domestic battery," not because he was not calming down.

¶ 18 On cross-examination, Carbray acknowledged that he had been to the Ward home on numerous occasions. Carbray knew that defendant was a journalist who writes about the Geneva Police Department's incompetency. In his report, Carbray did not use the words "unhinged" or "physically shaking" to describe defendant. Carbray responded to the Ward residence when the house and truck were firebombed. On another call, people were throwing garbage at the Ward house and trying to break in. Carbray also recalled that defendant had complained about loud helicopter noise coming from Delnor Hospital, which is close to the

Ward home. Carbray said that sometimes defendant is pleased with the police and sometimes he is upset with them. Carbray said that, prior to testifying, he looked over the "policy" and "the law." Carbray stated that, when defendant pushed Leslie, they were standing side by side and that Leslie was not standing between him and defendant. After several questions about bias, Carbray acknowledged that his dislike for defendant is a bias. When Carbray was asked what Leslie said to him when defendant pushed her, the prosecutor objected on the grounds of hearsay, and the trial court sustained the objection. Carbray did acknowledge that Leslie told him that arresting defendant was "just another form of harassment against the Ward family."

¶ 19    On redirect examination, the prosecutor asked Carbray, "On each and every occasion that you responded to the defendant in the past, as asked on cross examination, was he arrested every single time?" Carbray responded, "No, he was not." The State then rested.

¶ 20                              E. Motion for a Directed Verdict

¶ 21    At the close of the State's evidence, defendant made a motion for a directed finding.[1] Defense counsel argued that no witness testified "to having been insulted." Counsel pointed out that Leslie "expressly said that she was not insulted." Counsel argued that the only issue is whether the contact between defendant and Leslie was insulting, not defendant's "demeanor towards any other individual." Counsel noted that there were four different versions of events, before stating "Mrs. Ward was, by varying accounts, moved one step or two steps or three steps. Mrs. Ward herself said that Mr. Ward held on to her." Counsel stressed that this was a "minor contact" that "should not be a question that goes to the jury."

¶ 22    The prosecutor noted that, in ruling on a motion for a directed verdict, "the [c]ourt views all of the evidence and testimony that has been presented in the light most favorable to the State." The prosecutor noted that there was evidence that defendant yelled at Leslie to "shut up" and "then pushed [Leslie] out of the way." The prosecutor argued that defendant "shoved her out of the way because he didn't like what she was saying" and that defendant "was enraged with the Geneva Police Department." The prosecutor said that this was not a minor contact and that it was a fact question "up to the jury." The prosecutor then made the following argument:

> "What I would also like the court to consider is the fact in the simple reading of the statute, the simple reading of the statute reads, that the defendant made physical contact of an insulting and provoking nature with Leslie Ward. It does not state anywhere in the charging documents or the simple reading of the statute that she herself has to be insulted or provoked. It is the nature of the act that is insulting and provoking."

The prosecutor then argued that the fact that Stilling was "shocked" was not impeached and that Stilling "was shocked and insulted and provoked by this." The prosecutor argued that Carbray's immediate statement to defendant, that defendant "just committed domestic battery in front of [him]," was evidence that the contact was "insulting and provoking."

¶ 23    The defense responded by arguing that there was "no evidence that this was insulting." Counsel acknowledged that defendant's conduct, as described, would irritate him if he were a police officer and that maybe they should have charged defendant with "obstruction or something else," but not with domestic battery.

_____

[1]"Directed finding" is the phrase usually applied in bench trials. The appropriate phrase is "directed verdict" in a jury trial. *People v. Connolly*, 322 Ill. App. 3d 905 (2001).

¶ 24    The trial court pointed out that, while the State needed to show that defendant "[made] physical contact of an insulting or provoking nature with a family member," witnesses are not required to use the words "insulting or provoking." The court then stated as follows:

> "The [c]ourt is going to deny the motion for directed verdict. It's a factual question that the jury is going to decide. Certainly the terms [']insulting['] or [']provoking['] are common enough for a jury to determine *whether or not the testimony as presented is sufficient*. That will be what the question ends up being for the jury to determine." (Emphasis added.)

¶ 25    Defendant elected not to testify and rested without presenting any evidence. Defense counsel, citing *People v. Connolly*, 322 Ill. App. 3d 905 (2001), again asked that the trial court enter a directed verdict. Counsel cited the discrepancies in the "four different stories" and the lack of any evidence that anyone was "insulted." Counsel noted that "Mrs. Ward said I'm not— he moved me to the side. I'm not upset with it." The trial court acknowledged "the differences in the four witnesses" and said that the defense had "done a good job" but that "it's a factual determination as to whether a reasonable person would find [the contact] to be insulting." The court said that the question of whether defendant "was agitated at the police or whether he was agitated at the alleged victim in this case was 'something for the jury to determine and I'm not determining that at this time.' "

¶ 26    Defense counsel then made a motion for a mistrial based on the State's failure to "perfect impeachment" of Leslie when she was asked if she spoke to defendant while he was at the police department and if he told her what to say at bond call. Leslie denied both speaking to defendant and that he told her what to say. The trial court denied the motion.

¶ 27    During closing argument, the State argued that defendant took out his frustration with his son and the police "on his wife when he committed a domestic battery on her."

¶ 28    The defense argued that the evidence showed only that defendant moved Leslie over and that there was no evidence that she was insulted. Counsel argued that Leslie told Carbray at the time that she was not "offended or hurt" and that the police were "harassing [her] family." During rebuttal argument, the prosecutor acknowledged that Leslie did not want charges pressed against defendant. The prosecutor argued that, if it were up to Leslie, the domestic battery "would have never been charged." The prosecutor argued that "[t]he People are complaining that this defendant committed a domestic battery and he needs to be held accountable." Next, the prosecutor noted that Leslie's dislike for her (prosecutor) "was palpable," that Leslie believed that the "whole thing was a farce," and that Leslie "doesn't believe that this is a crime. It's unfair to her." The prosecutor argued that "that is not the law" and that "[i]t doesn't matter that Mrs. Ward doesn't think what happened to her is a crime[,] because it is. She was a victim of domestic battery and that's why you should care." This theme continued as the prosecutor argued, "[i]f a victim of domestic battery cannot get on the stand and say she cares about what happened to her, the People of the State of Illinois will tell you that what happened to her is not okay." The prosecutor argued that defendant was putting Leslie "in her place" and yelled at her to " 'shut up.' How humiliating."

¶ 29    The prosecutor acknowledged that "Mrs. Ward might not want the charges pressed against this defendant" and suggested that "[t]here's a ton of reasons why." The prosecutor then argued that the "kind of conduct exhibited by the defendant in the open, in front of everybody, putting his wife in her place, literally moving her out of the way, that is domestic battery." The prosecutor argued that there was no evidence to suggest bias on the part of the Geneva Police

Department, because defendant's son was given only a warning ticket for failure to reduce speed. The jury found defendant guilty.

¶ 30                                   F. Posttrial Proceedings

¶ 31     Defendant filed a lengthy posttrial motion, requesting that the trial court vacate the jury verdict and enter a finding of not guilty or, in the alternative, grant defendant a new trial. The motion challenged the assignment of a judge from another circuit, the refusal of defendant's request to present consent as a defense, and the trial court's denial of defendant's motion for a directed verdict based on the insufficiency of the evidence. The motion raised additional claims that are not relevant to this appeal.

¶ 32     In its response to defendant's posttrial motion, the State argued that the "victim in a domestic battery case does not dictate whether charges are filed against the defendant." The State also argued that, when an officer "observes an act of domestic battery," the officer "does not have the independent discretion to not make an arrest." The State argued that it did prove that "defendant's actions were insulting to Leslie Ward because the jury returned a verdict of guilty." The State argued that Barbara Stilling's testimony that she was "shocked" by defendant's action was "evidence of insulting conduct."

¶ 33     During argument on defendant's posttrial motion, defense counsel argued that the police did have discretion to not make an arrest and that the Geneva Police Department "[did] not like [his] client." Counsel argued that defendant is an outspoken critic of the system and has "been a very outspoken critic of judges" and "of the Geneva Police Department." Counsel argued that Leslie should have been allowed to testify that she consented. Counsel argued that it was error to instruct the jury on "insulting or provoking" when the charge specified only "insulting." Defense counsel argued that the assignment of an out-of-circuit judge was a "mystery" to him and that no explanation was given as to why that occurred.

¶ 34     The prosecutor argued that defendant cited no case authority for the proposition that it was error to have an out-of-circuit judge assigned. The prosecutor also noted that defendant filed a motion for substitution of judge within the statutory time frame, so "he was made aware of it." The prosecutor argued that, "[p]ursuant to 750 ILCS 60/304(a)(1) (West 2018), it actually cites to how when a police officer observes an act of domestic violence he is required to make an arrest." The prosecutor again cited Stilling's testimony as evidence that the contact was "insulting or provoking." The prosecutor contended that "it comes down to the nature of the act."

¶ 35     The defense responded that the State had not met its burden where there was no evidence that Leslie was insulted or provoked. Counsel agreed that, in order to prove insulting or provoking contact, the victim "does not have to testify that he or she was provoked." However, counsel argued that, "in this case, the victim didn't react at all. In fact, she reacted the other way.*** She said, 'I don't want him arrested. I am not insulted in any[ ]way."

¶ 36     The trial court ruled that the assignment of an out-of-circuit judge was not an appropriate basis for a posttrial motion. The trial court stated that it was "interesting" that the victim did say "she was not insulted" and "not provoked." The trial court commented:

        "She even used the words that she didn't find the touching to be offensive. Her opinion of that is also not controlling. It is the jury that determines what—although— although what the victim says is certainly evidence and certainly can be used. If that is

all we had to do, there would be—every time a wife took the stand and said, 'I don't want this charge [anymore]' or 'I want to go back to him,' we would never have a domestic battery conviction. And so I find that argument completely missing the point of what the jury did here.

And I stand by my reading of the *Ford* case. It is, again, descriptive. And this—and I don't believe that a victim can consent to a domestic battery that is defined as a physical contact of an insulting or provoking nature. That[,] in and of itself[,] takes it out of the non-offensive touching."

The trial court stated that the argument regarding incomplete impeachment of Leslie was not well founded. Next, the trial court said that the "defense chose to put all of their eggs in the basket that the Geneva Police Department was biased against Mr. Ward." The court noted that defendant "is certainly entitled to have whatever opinion he wants to have. He didn't take the stand." The trial court said that, through the cross-examination by the defense, "you could tell" that "[defendant] didn't like the Geneva Police Department." The court said that defendant counted on convincing the jury that the only reason he was prosecuted was the bias of the Geneva Police Department and that "he guessed wrong. The jury convicted him." The court commented that "it was a credibility issue" and that three other witnesses besides Leslie "testified as to the touching, as to the incident." For that reason, the court denied the posttrial motion.

¶ 37 Following argument on the posttrial motion, the trial court conducted a brief sentencing hearing. The prosecutor began by stating that "defendant does not have any criminal history to report to the court." The State requested a sentence of probation or conditional discharge with a number of conditions, including domestic violence counseling and a mental health evaluation. Defense counsel argued that "there is no history of domestic violence" and that what occurred was "a domestic touching, not of violence." Leslie then addressed the trial court. She said, "[W]hat we are doing here is taking away my right to decide whether or not I was insulted." She said that defendant did not do anything harmful to her and that "[she] was not allowed to decide whether [she] was insulted. Which is insulting."

¶ 38 The trial court commented, "[I]t appears to me that more than domestic violence there is an anger issue." Defendant was sentenced to one year of conditional discharge and was ordered to undergo an anger management assessment and any recommended treatment. Defendant timely appealed.

¶ 39 II. ANALYSIS

¶ 40 Defendant raises the following issues on appeal: (1) whether defendant's case was "improperly transferred to Ogle County at the request of the chief Judge of the 16th Circuit and denied defendant due process," (2) "whether the trial court abused its discretion in denying defendant's motion for a directed verdict," (3) "whether the trial court erred in denying a modified version of the Illinois Pattern Jury Instructions that accurately conveys the law," and (4) whether the State failed to prove defendant guilty of domestic battery (making contact of an insulting or provoking nature) beyond a reasonable doubt. The first two issues are dispositive.

¶ 41                    A. Assignment of a 15th Circuit Judge

¶ 42    In his brief, defendant argues that his case was transferred "to a county outside of the 16th Judicial Circuit," which resulted in his "being denied a fair trial from the outset." We have no authority to overrule our supreme court. "General administrative authority over all courts is vested in the Supreme Court and shall be exercised by the Chief Justice in accordance with its rules." Ill. Const. 1970, art. VI, § 16. The constitution specifically provides that "[t]he Supreme Court may assign a Judge temporarily to any court." *Id.* The defendant was tried in Kane County, and the assignment of Judge Lindsay to preside over his case was clearly within the constitutional authority of the Chief Justice.

¶ 43                    B. Defendant's Motion for a Directed Verdict

¶ 44    Defendant argues that the State presented "no evidence or testimony" to prove that "the victim felt intimidated, surprised, startled, alarmed, offended, insulted, or provoked in any way." Defendant acknowledges that proof of insulting or provoking contact does not require that the victim testify that the contact was insulting or provoking and that "the trier of fact can make that inference from the victim's reaction at the time." Defendant argues that "the fact that observers may have objected to [defendant's] behavior doesn't transform it into a criminal offense, nor should it." Defendant also argues that the State's evidence was insufficient as a matter of law to prove that defendant "knowingly made contact with his wife in an undignified or contemporaneous [*sic*] manner." Defendant asks that we review *de novo* of the denial of a motion for directed verdict.

¶ 45    The State argues that the "circumstantial evidence, including the factual context in which defendant's pushing of Leslie Ward[,] was sufficient to establish beyond a reasonable doubt that his contact with Leslie Ward was of an insulting nature." The State argues that,

> "considering the consistency of the evidence presented through Stilling and the police officers, as well as the uncontroverted fact that Leslie Ward was facing defendant when he pushed her, the jury was not bound to accept Leslie Ward's testimony that she was attempting to shield defendant from police and could have reached the opposite conclusion—that Leslie was attempting to calm defendant, who was agitated, yelling[,] and in the face of the police."

The State argues that proof of defendant's knowledge that the push was insulting or provoking was established by testimony that "he was acting aggressively toward police officers" and "yelled at Leslie Ward to 'shut up.' " The State argues that the jury was not required to credit Leslie's testimony that she was not offended, insulted, or provoked over the testimony of Stilling, Hann, and Carbray. The State argues that "[t]his court should decline to review the court's denial of [defendant's] motion for directed finding *de novo*." The State cites no authority for this argument.

¶ 46    "A motion for directed verdict asserts only that as a matter of law the evidence is insufficient to support a finding or verdict of guilty." *People v. Withers*, 87 Ill. 2d 224, 230 (1981); 725 ILCS 5/115-4(k) (West 2018). In ruling on a motion for a directed verdict, the trial judge considers "only whether a reasonable mind could fairly conclude the guilt of the accused beyond a reasonable doubt, considering the evidence in a light most favorable to the State." *Connolly*, 322 Ill. App. 3d at 914 (citing *Withers*, 87 Ill. 2d at 230). The fourteenth amendment to the United States Constitution protects a defendant against conviction, " '[e]xcept upon evidence that is sufficient fairly to support a conclusion that every element of the crime has

been established beyond a reasonable doubt.' " *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 313-14 (1979)). A motion for a directed verdict provides "an avenue by which a defendant can challenge the constitutional sufficiency of the evidence against him by moving the trial court to review the evidence and to direct a verdict of not guilty if the evidence does not meet the *Jackson* standard." *Id.* at 915. In moving for a directed verdict, the defendant admits the truth of the facts presented by the State, for purposes of the motion. *Id.* The trial court "does not pass upon the weight of the evidence or the credibility of the witnesses in testing the sufficiency of the evidence to withstand a motion for a directed verdict." *Id.* "[A] motion for a directed verdict of not guilty asks whether the State's evidence could support a verdict of guilty beyond a reasonable doubt, not whether the evidence does in fact support the verdict." (Emphasis omitted.) *Id.* In ruling on "a motion for a directed verdict[,] the court can consider only competent evidence." *Hunter v. Troup*, 315 Ill. 293, 298 (1924); see *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 123 (2004) (no competent evidence on standard of care where the trial court struck testimony of plaintiff's medical expert; directed verdict for defendant was upheld). The lack of competent, material, legal evidence is grounds for a directed verdict. See 75A Am. Jur. 2d *Trial* § 794 (2020).[2] "If the plaintiff fails to produce a required element of proof in support of her cause of action, then no cause is presented for the jury's consideration and the entry of a directed verdict for defendant is proper." *Sullivan*, 209 Ill. 2d at 123. "A court is compelled to direct a verdict in favor of defendant at the close of the State's case if, in viewing all the evidence in favor of the State, the evidence overwhelmingly favored defendant such that the jury could not have concluded otherwise." *People v. Rascher*, 223 Ill. App. 3d 847, 854 (1992) (citing *Condon v. American Telephone & Telegraph Co.*, 136 Ill. 2d 95, 100 (1990)). "A mere scintilla of evidence is not enough to require the submission of an issue to the jury." *Dunning v. Cooley*, 281 U.S. 90, 93 (1930). The question for the judge is "not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." *Id.* Review of a ruling on a motion for a directed verdict presents a question of law, which we review *de novo*. *Connolly*, 322 Ill. App. 3d at 917.

¶ 47        Making sure that only relevant and competent evidence is considered by the jury is an important element of a fair trial. *Zafiro v. United States*, 506 U.S. 534, 540 (1993). Our supreme court has "consistently held that [guilt] must be established by legal and competent evidence, uninfluenced by bias or prejudice raised by irrelevant evidence." *People v. King*, 2020 IL 123926, ¶ 43. Trial judges also have an independent duty to correct misstatements of law. "The judge is, after all, the one responsible for instructing the jury on the law, a responsibility that may not be abdicated to counsel." *Brown v. Payon*, 544 U.S. 133, 146 (2005). Misstatements of the law on application of essential elements may amount to plain error. *People v. Carbajal*, 2013 IL App (2d) 111018, ¶¶ 46-47.

¶ 48        We first note that the trial court, in denying the motion for a directed verdict, declined to rule on the legal sufficiency of the evidence. The trial court commented that "the terms [']insulting or provoking['] are common enough for a jury to determine whether or not the testimony as presented is sufficient." However, the sufficiency of the competent evidence presents an issue of law on which the trial court is obligated to rule. "[T]he trial court is

---

[2]Competent evidence is evidence that is not barred by some rule of evidence that excludes it. Robert S. Hunter, Trial Handbook for Illinois Lawyers-Criminal § 38.3 (8th ed. 2002).

obligated to rule on the defendant's motion for a directed verdict." *Rascher*, 223 Ill. App. 3d at 854. A defendant should not have to "guess as to whether the State had proved its case." *Id.* During its comments while considering defendant's renewed argument for a directed verdict, the trial court remarked, "I don't think it's such a clear question one way or the other" and "it's up to the jury to make the determination and it's a factual determination as to whether a reasonable person would find it to be insulting." The trial court noted that it was up to the jury to determine whether defendant was "agitated at the police or whether he was agitated at the alleged victim in this case." The trial court accepted the State's argument, repeated throughout the prosecution, that under the domestic battery statute the State is required to prove not that the victim was herself insulted or provoked but only that the contact itself was insulting or provoking. During argument on the motion for a directed verdict, the State argued that "[i]t does not state anywhere in the charging documents or the simple reading of the statute that she herself has to be insulted or provoked. It is the nature of the act that is insulting or provoking." The State argued that the evidence showed that Stilling "was shocked and insulted and provoked by this." During closing arguments to the jury, the State conceded that Leslie was not insulted or provoked and that she believed that "this whole thing [was] a farce." According to the State, Leslie "[did not] believe that this was a crime."

¶ 49     Illinois's domestic battery statute defines domestic battery based on insulting or provoking physical contact:

>     "(a) A person commits domestic battery if he or she knowingly without legal justification by any means:

>     (b) Makes physical contact of an insulting or provoking nature with any family or household member." 720 ILCS 5/12-3.2(a)(2) (West 2018).

¶ 50     We disagree with the State's interpretation of the statute. While it is true that the victim is not required to explicitly testify that he or she felt insulted or provoked, the State is required to prove that the physical contact insulted or provoked the victim, not some third party. The cardinal rule of statutory construction is to give effect to the legislature's intent by giving language its plain meaning while avoiding absurd results. *People v. Hanna*, 207 Ill. 2d 486, 498 (2003). Our court has consistently held that "[t]he domestic battery statute's plain language defines the offense in terms of contact *that insults or provokes the victim*, and the contact does not need to cause physical injury." *People v. Green*, 2011 IL App (2d) 091123, ¶ 23 (citing *People v. DeRosario*, 397 Ill. App. 3d 332, 334 (2009)). "The difference between simple battery and domestic battery is that the latter is committed against 'a family or household member as defined in subsection (3) of Section 112A-3 of the Code of Criminal Procedure ***.' [Citation.]" *People v. Wilson*, 214 Ill. 2d 394, 397 (2005). Every district in our state has consistently held that, when a defendant is accused of battery or domestic battery (insulting or provoking contact), the State must prove that the defendant's physical contact was insulting or provoking to the victim, not to some third party. See *People v. Craig*, 46 Ill. App. 3d 1058, 1060 (1977) (no evidence to show defendant's "purpose was to provoke or insult the complainant"); *DeRosario*, 397 Ill. App. 3d at 334 ("plain language defines the offenses in terms of contact that insults or provokes the victim"); *People v. Bissaillon*, 55 Ill. App. 3d 893, 894 (1977) ("complaint need not allege that defendant's contact was both insulting and provoking and the cause of bodily harm to the victim"); *People v. Wrencher*, 2011 IL App (4th) 080619, ¶ 55 (trier of fact can make the inference that the victim was insulted or provoked "from the victim's reaction at the time"); *People v. Latham*, 13 Ill. App. 3d 371, 373-74 (1973)

(indictment alleging defendant committed aggravated battery on a peace officer was defective where it did not allege that "either bodily harm or *** physical contact of an insulting or provoking nature resulted from the physical contact").

¶ 51   One recent case from the Fourth District disagrees with our interpretation of the element of "insulting or provoking contact" in Illinois's battery statutes. In *People v. Williams*, 2020 IL App (4th) 180554, the defendant was found guilty of aggravated battery (great bodily harm), armed violence, and aggravated battery (insulting or provoking/public way) (720 ILCS 5/12-3.05(c) (West 2018)) following a jury trial. The evidence at trial established that the defendant kicked the unconscious victim in the head. Prior to being kicked, the victim had been struck in the back of the head by another person. He fell to the sidewalk and did not remember much after that. On appeal, the defendant argued that the evidence was insufficient. The defendant argued that "a person cannot make contact of an insulting or provoking nature with an individual who is already unconscious." *Williams*, 2020 IL App (4th) 180554, ¶ 49. In rejecting this argument, the majority stated that "[t]he plain language of the statute applies the terms 'insulting or provoking' to the types of contact, not to the reaction of the victim. In other words, the jury should determine if the contact was of the sort that would be insulting or provoking." (Emphasis omitted.) *Id.* ¶ 50. The majority disagreed with our interpretation of the terms "insulting or provoking" in *DeRosario*, 397 Ill. App. 3d at 336. The majority stated that "[i]nsofar as the Second District may have endorsed the notion that a victim must in fact be subjectively insulted or provoked, we decline to follow the Second District's reasoning." *Williams*, 2020 IL App (4th) 180554, ¶ 52. Justice Turner specially concurred, stating that "[t]he plain language of the statute requires that the insulting or provoking contact must be made with an individual, and the individual is of course the victim." *Id.* ¶ 93 (Turner, J., specially concurring). Justice Turner noted that the majority had noted that " '[a]ny person would know that when defendant kicked [the victim], that was "physical contact of an insulting or provoking nature" at a minimum, and the jury was entitled to come to that conclusion.' " *Id.* ¶ 93 (quoting 2020 IL App (4th) 180554, ¶ 50 (majority opinion)). Justice Turner disagreed with the majority's criticism of *DeRosario*.

¶ 52   We disagree with the majority in *Williams* that it is the "type of contact" that governs whether contact is "insulting or provoking." If that were the case, we would not look to the context, the relationship of the parties, and the reaction of the victim at the time. As the First District stated in *People v. d'Avis*, 250 Ill. App. 3d 649, 657 (1993), "[W]hat may be an innocent touching in one instance, may be interpreted quite differently in a different set of circumstances." *Id.* at 651. In *DeRosario*, the physical contact was minor; the defendant's knee touched the victim's back and hip while he sat behind her in a smoking lounge. *DeRosario*, 397 Ill. App. 3d at 332. The "contact occurred in the context of a failed relationship," and the defendant had "been stalking" the victim. *Id.* at 334.

¶ 53   "The terms 'insulting' and 'provoking' are taken from the common law tort of battery, which requires only an offensive contact—the sort of thing that might provoke a breach of the peace." *United States v. Evans*, 576 F.3d 766, 767 (7th Cir. 2009). Spitting on a person is a common example of the type of contact that may amount to battery. *Id.* Spitting on a person is an act of "pure malignity." *Alcorn v. Mitchell*, 63 Ill. 553, 554 (1872). The State's argument that it is not required to prove that defendant's physical contact caused Leslie to be "insulted" or "provoked" is inconsistent with the plain language of the statute. The committee comments to section 12-3 (battery) note that "[t]raditionally, any unlawful touching of another constituted

- 13 -

a battery." 720 ILCS Ann. 5/12-3, Committee Comments-1961, at 250 (Smith-Hurd 1993). The comments explain that the amended statute is intended "to limit the traditional 'barest touching[,]' which does not cover bodily harm[,] to one of 'an insulting or provoking nature.' " *Id.* Just as a defendant cannot be found guilty of battery based on "bodily harm" without some form of physical pain or damage to the body of the victim, a defendant cannot be found guilty of battery based on "physical contact of an insulting or provoking nature with an individual" without some form of proof that the victim was insulted or provoked. The Illinois Supreme Court decision in *People v. Hale*, 77 Ill. 2d 114 (1979), illustrates this point. In *Hale*, the defendant was charged with knowingly making contact of an "insulting or provoking nature" with a police officer engaged in the execution of his official duties. *Id.* at 115. The defendant's motion to dismiss for failure to state the offense of aggravated battery was granted "in order that the State might seek review of the ruling on the aggravated battery charge." *Id.* The appellate court held that "the information was insufficient to charge aggravated battery because it did not allege that the police officer suffered bodily harm." *Id.* Our supreme court reversed the appellate court, explaining that the Criminal Code of 1961 identifies two alternative types of misconduct that can be defined as battery:

> " 'A person commits battery if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual.' [Citation.]" *Id.*

¶ 54    The supreme court noted that the Criminal Code provides in section 12-4 that the act of battery will constitute aggravated battery, a Class 3 felony, in certain enumerated situations, including the following:

> "(b) A person who, in committing a battery either:
>
> * * *
>
> (6) Knows the individual harmed to be a peace officer *** so engaged in the execution of any of his official duties including arrest or attempted arrest." (Internal quotation marks omitted.) *Id.* at 116.

The court explained that the issue before it was whether, "under section 12-4(b)(6), insulting or provoking physical contact knowingly inflicted upon a police officer engaged in the execution of his duties constituted aggravated battery or whether only battery resulting in bodily harm to the officer comes within [the] statute." *Id.* at 117. The court noted that the appellate court districts were "not in harmony." *Id.* Citing *People v. Meints*, 41 Ill. App. 3d 215 (1976), the court concluded that the words "battered" and "harmed" in the aggravated battery statute do not refer to the technical "meanings of 'battery' and 'harm' in the battery statute." *Hale*, 77 Ill. 2d at 118. The court stated that "all three words ['assaulted,' 'battered,' and 'harmed'[3]] were used synonymously, and, consequently, either of the alternative acts of battery will satisfy section 12-4(b)(6)." *Id.* The court noted that its conclusion was reinforced "by its compatibility with the apparent legislative purpose to afford additional protection to those in positions of authority." *Id.* "Since a battery is committed *upon ordinary persons* by either causing bodily harm or by insulting or provoking physical contact, consistency would seem to require that both forms of misconduct would constitute aggravated battery *when committed upon those in authority*." (Emphases added.) *Id.* at 118-19.

---

[3]As the court noted, section 12-4 also used the phrase " 'assaulted.' " *Hale*, 77 Ill. 2d at 118 (quoting Ill. Rev. Stat. 1977, ch. 38, ¶ 12-4(b)).

- 14 -

¶ 55    We reject the majority analysis in *Williams*. Were we to accept that reasoning, cases like *DeRosario* would not result in conviction, because the nature of the contact was not insulting or provoking. It was the context along with the victim's reaction at the time that made the contact insulting or provoking.

¶ 56    While we agree with the State that a victim does not have to testify that he or she was insulted or provoked by a defendant's physical contact, there must be evidence presented from which a trier of fact could logically infer that the victim was insulted or provoked. This case is similar in many aspects to *People v. McDowell*, 2015 IL App (2d) 140301-U, which was also prosecuted by the Kane County State's Attorney's Office.[4] In *McDowell*, the defendant was convicted of domestic battery (insulting or provoking contact) following a bench trial. *Id.* ¶ 2. The defendant and his wife attended a party. *Id.* ¶ 4. While at the party, the defendant became involved in an altercation with another man at the party. *Id.* ¶ 6. The defendant was angry and attempted to go after the man. *Id.* A group of men were restraining the defendant when his wife, Andrea, sought to intervene. *Id.* Defendant pushed Andrea to the ground. *Id.* One of the partygoers called 911 and reported that " 'there's a guy who is very drunk and pushing over his wife and injuring her *** possibly.' " *Id.* Andrea testified that the defendant did push her and she did fall but that she never hit her head. *Id.* ¶ 18. When the police arrived, she told them that " '[it] was an accident.' " *Id.* On cross-examination, she said that "her husband moved her out of the way and the fall was accidental." *Id.* ¶ 19. She acknowledged that she had said that her husband was " 'just a dumbass.' " She testified that she did not ask that the police be called and refused to fill out a written statement. *Id.* ¶ 20. She was told that the defendant was being arrested for a "time out" to "calm down." *Id.*

¶ 57    During closing arguments in *McDowell*, the State made an argument that was identical to that made in this case. The prosecutor commented that "Andrea was never cooperative, but she 'doesn't get to determine whether a crime was committed or not.' " *Id.* ¶ 23. The State argued that pushing someone " 'with two hands hard enough for them to hit an asphalt driveway and hit their head and that individuals starting crying, it's clear not only was that insulting or provoking *** [but] that there was bodily harm.' " *Id.* Defense counsel argued that Andrea's testimony was consistent with what she told police, that "[the incident] was an accident." *Id.* ¶ 37. Defense counsel noted that, when Andrea went to the ground, the defendant was being restrained by a group of people. Counsel argued: " '[T]here certainly are times when you can infer a battery or domestic battery would be insulting or provoking. This isn't one of them.' " *Id.* ¶ 24. The trial court found the defendant not guilty of domestic battery (bodily harm) and guilty of domestic battery (insulting or provoking contact). *Id.* ¶ 26.

¶ 58    On appeal, we held that the State had sufficient evidence to prove that the defendant acted knowingly, without legal justification, and that the victim was a family or household member. *Id.* ¶ 42. We rejected, however, the State's argument that the evidence was sufficient to prove that the defendant made contact of an insulting or provoking nature with Andrea. *Id.* ¶ 43. We distinguished *People v. Fultz*, 2012 IL App (2d) 101101, where the defendant was found guilty

[4]Rule 23 orders are nonprecedential. Ill. S. Ct. R. 23(e) (eff. Jan. 1, 2021). However, no language in Rule 23 expressly forbids the appellate court from adopting the reasoning of an unpublished order. *Byrne v. Haynes Beer Distributing Co.*, 2018 IL App (1st) 172612, ¶ 22. Given the factual similarities, we find the reasoning in *McDowell* persuasive.

- 15 -

of aggravated battery by making contact of an insulting or provoking nature with a police officer as he was attempting to arrest the defendant's mother. *McDowell*, 2015 IL App (2d) 140301-U, ¶ 44. We noted that, unlike the domestic battery cases "where the victim is either not called by the State as a witness, or where he or she recants an earlier version to police or others, there was no impeachment of Andrea." *Id.* ¶ 46. We also noted that the contact alone (a push), unlike being spat upon or having a substance thrown on an individual, "does not allow an inference that Andrea was insulted or provoked." *Id.* ¶ 50.

¶ 59    In this case, like in *McDowell*, Leslie was intervening on her husband's behalf while he was involved in a heated argument. Defendant yelled for her to "shut up" and pushed Leslie to the side.[5] Defendant held onto Leslie's arm to keep her from falling as he continued to argue with Carbray. Leslie's testimony on this point was unimpeached.

¶ 60    The State postulated that victims do not decide whether or not charges are to be filed, which is certainly true. "While a police officer has considerable latitude in charging an individual, the ultimate responsibility of filing a charge and prosecuting it lies with the State's Attorney." *People v. Woollums*, 63 Ill. App. 3d 602, 608 (1978).

¶ 61    Domestic violence is a serious problem in our state and in our entire country. Domestic violence affects more people than just victims, their abusers, and their families. It affects everyone within the victim's and the abuser's circle. There is no question that aggressive prosecution is an appropriate response when there is sufficient evidence to obtain a conviction. Domestic violence is the type of crime in which the victim can be very susceptible to intimidation to ensure that the victim does not testify against the abuser. *People v. Connolly*, 406 Ill. App. 3d 1022, 1025 (2011).

¶ 62    Domestic battery based on physical contact of an insulting or provoking nature can be proven by facts and circumstances surrounding the defendant's conduct, even where the victim denies being insulted or provoked or the victim refuses to cooperate. See *People v. LaRoche*, No. 2-10-0314 (2010) (unpublished order under Illinois Supreme Court Rule 23) (the victim, the defendant's stepson, did not testify); *People v. Henshall*, 2020 IL App (2d) 170938-U, ¶ 12 (casino video camera captured defendant repeatedly abusing his 84-year-old mother; mother testified and "denied feeling provoked or insulted")[6]; *People v. Robinson*, 379 Ill. App. 3d 679 (2008) (victim refused to sign a complaint and did not testify).

¶ 63    The Illinois Domestic Violence Act of 1986 (750 ILCS 60/303(a) (West 2018)) and the Protocol for Law Enforcement and Prosecution (Ill. Criminal Justice Info. Auth., Protocol for Law Enforcement & Prosecutors: Responding to Victims of Domestic Violence, at 24 (Sept. 2019), http://www.icjia.state.il.us/assets/ifvcc/DV%20Protocols%20FINAL.pdf [https://perma.cc/ZH2S-2CPE]) both require an investigation of every "*bona fide*" allegation of domestic violence. Police officers are trained to collect evidence and write reports in anticipation that the victim may not cooperate with the investigation and prosecution. Evidence-based prosecutions are now common in domestic violence cases. In this case, the investigation consisted of Sergeant Carbray concluding that defendant committed domestic battery without even asking Leslie if she was hurt or upset. It is generally improper for a police officer to give his or her opinion that a defendant committed the offense. *People v. Crump*, 319

---

[5]Although both Leslie and Stilling said that they did not hear defendant yell, "shut up," we view the evidence in the light most favorable to the State.

[6]See *supra* ¶ 56 n.3.

- 16 -

Ill. App. 3d 538, 544 (2001). Even Ms. Stilling, the only unbiased witness, admitted that she never told the police that she was "shocked," "startled," or "insulted." She said that she may have used the word "surprised." Although the defense did not object to Stilling's testimony about how defendant's contact with Leslie made "her feel," the defense argued both at the motion for a directed verdict and in defendant's posttrial motion that Stilling's testimony about her reaction was irrelevant.

¶ 64    Ms. Stilling's testimony regarding what she saw and heard was traditional lay witness testimony. "It is well settled in Illinois that the testimony of a lay witness must be confined to statements of fact of which the witness has personal knowledge." *People v. Brown*, 200 Ill. App. 3d 566, 579 (1990); Ill. R. Evid. 602 (eff. Jan. 1, 2011). Stilling had never met defendant or Leslie and knew nothing about the couple's relationship. Stilling's "feeling" about what occurred was not relevant to any issue in this case. This testimony was elicited in order to have Stilling express her personal opinion about what she saw. This testimony also invaded the province of the jury. "It is the jury's job to draw inferences from the facts, not the witnesses' job to provide inferences from them." *People v. McCarter*, 385 Ill. App. 3d 919, 934 (2008). "[W]hile a lay witness may testify to his observations or sensory perceptions, he generally may not give his opinions or interpretations of those observations." *Id.* The trial court should not have considered Stilling's improper opinion evidence in ruling on defendant's motion for a directed verdict.

¶ 65    Testimony regarding how Leslie appeared or reacted immediately after the push would have been relevant. A lay witness may testify to the apparent emotional state of other persons, provided there is a sufficient foundation. See Ill. R. Evid. 701 (eff. Jan. 1, 2011). For example, in *Zoerner v. Iwan*, a lay witness was allowed to testify that the driver of a car was delirious and disoriented. 250 Ill. App. 3d 576, 580-81 (1991). In *People v. Peter*, 220 Ill. App. 3d 626, 630-31 (1991), a customs agent testified that a person had a "momentary look of panic." Noticeably absent from the State's evidence is any testimony that Leslie looked "startled," "upset," "angry," "surprised," or "agitated" or that she exhibited any of the emotions that most people feel when someone has "insulted or provoked" them by uninvited contact. Our supreme court observed long ago that not "all intentional contact without legal justification" constitutes a battery. *People v. Abrams*, 48 Ill. 2d 446, 462 (1971). At the same time, even a slight contact can insult or provoke a victim, depending upon the context and the victim's reaction at the time. See *DeRosario*, 397 Ill. App. 3d at 334-35; *People v. Wrencher*, 2011 IL App (4th) 080619, ¶ 55 ("the victim does not have to testify that he or she was provoked; the trier of fact can make that inference from the victim's reaction at the time" (citing *People v. Dunker*, 217 Ill. App. 3d 410, 415 (1991)).

¶ 66    The State argues that it is an "uncontroverted fact that Leslie Ward was facing defendant when he pushed her." This was not the testimony of Hann or Carbray. They both testified that Leslie was standing next to defendant at the time. We accept the State's version, because it must believe that Leslie's and Stilling's versions present the evidence viewed in the "best light." The State argues that, despite the lack of any emotional reaction, we can infer that the contact with her was insulting or provoking because defendant was "agitated, yelling[,] and in the face of the police." Leslie's testimony was that defendant's focus was on the police and that he simply moved her to the side while holding on to her arm so she would not fall. This testimony was unimpeached. Leslie stepped between defendant and Carbray, and she believed that she may have placed her hand on defendant's chest while saying something to him. His

reaction appeared to be a response to protect his personal space. See *People v. Boyd*, 2016 IL App (1st) 140599-U.[7] During rebuttal closing argument, the State conceded that Leslie "doesn't believe that this is a crime" and "it doesn't matter that Mrs. Ward doesn't think what happened to her is a crime[,] because it is."

¶ 67    The State objected, on hearsay grounds, to the introduction of Leslie's comment to Carbray when he told defendant that he had committed a domestic battery. If Leslie had been "insulted or provoked" by the push, her statement would qualify as an excited utterance. Ill. R. Evid. 803(2) (eff. Sept. 28, 2018) ("[a] statement relating to a startling event or condition made while the declarant was under stress of excitement"); *People v. Gwinn*, 366 Ill. App. 3d 501, 517 (2006). The evidence shows that Leslie maintained her composure and was not offended at all by her husband's push. Without any evidence, either direct or circumstantial, from Leslie's reaction that would allow for an inference that she was insulted or provoked, the State's argument amounts to pure speculation. A conviction based on speculation cannot stand. *People v. Smith*, 185 Ill. 2d 532, 545-46 (1999); *People v. Ehlert*, 211 Ill. 2d 192, 215 (2004) ("[t]his court cannot affirm a conviction based on speculation"). The contact here, a push accompanied by the phrase "shut up," without more, is not a type of contact that automatically gives rise to an inference that the victim was insulted or provoked.

¶ 68    Our supreme court has observed that "the fact a judge or jury did accept testimony does not guarantee it was reasonable to do so." *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). In this case, the jury was presented with damaging testimony that never should have been introduced.

¶ 69    The most damaging testimony to defendant was that of Carbray. On direct examination, Carbray testified that, "on countless occasions[,] [he has] handled calls with Mr. Ward." He testified that there were at least a dozen calls involving defendant, and he added, "I believe he's a bully who creates a lot of issues and tries to manipulate people." This testimony suggested that defendant may have committed other offenses, and it introduced improper character evidence. Carbray's opinion that defendant is a bully came in without objection, and the trial court took no action to instruct the jury to disregard it. At the very least, the trial court should not have considered it in ruling on the motion for a directed verdict. It is well established that "[t]he prosecution may not present evidence of a defendant's bad character until defendant puts his character in issue by presenting evidence of good character." *People v. Lucas*, 151 Ill. 2d 461, 483-84 (1992); see *People v. El*, 83 Ill. App. 3d 31, 38 (1980); Ill. R. Evid. 404(a) (eff. Jan. 1, 2011). Being a bully is a character trait associated with domestic abusers who try to control and manipulate their victims through a pattern of abuse. Ill. Criminal Justice Info. Auth., Protocol For Law Enforcement & Prosecutors: Responding to Victims of Domestic Violence, at 7 (Sept. 2019), http://www.icjia.state.il.us/assets/ifvcc/DV%20Protocols%20 FINAL.pdf [https://perma.cc/ZH2S-2CPE] ("Domestic violence is about power and control wrongly exercised by an abuser against a victim."). This highly prejudicial evidence may have been used by the jury to explain why Leslie showed no reaction to the push. In other words, she was used to being pushed around. Carbray offered his opinion that the defendant's conduct constituted a domestic battery. First, Carbray could not have determined what was in Leslie's mind to make such an assessment, because she had no reaction. It is generally improper for a

---

[7]See *supra* ¶ 56 n.3.

- 18 -

police officer to give his or her opinion that a defendant committed the offense. *Crump*, 319 Ill. App. 3d at 544.

¶ 70    After defendant pushed Leslie, Carbray immediately told defendant that he committed a domestic battery. He did not even ask Leslie if she was hurt or offended by what just occurred. Carbray professed repeatedly that he was familiar with the Domestic Violence Act and the Geneva Police Department policies on domestic violence. Arrest policies in local agencies must be "consistent with the provisions of the Act." 750 ILCS 60/301.1(a) (West 2018). The defense theory was that no crime had been committed and that the Geneva Police Department had a vendetta against defendant because he writes stories on his blog that are critical of the Geneva Police Department. In an effort to negate or rebut this defense, the State repeatedly elicited testimony that, under the Domestic Violence Act, Carbray did not have the discretion not to make an arrest. Carbray even testified that he looked at the "policy" and the "law" before testifying. If he had truly done so, Carbray would have realized that his testimony that he had no discretion was false. Some states have mandatory arrest policies for domestic violence. Illinois is not one of those states. The Act provides that, whenever an officer "has reason to believe that a person has been abused *** by a family member or household member, the officer shall use all reasonable means to prevent further abuse, neglect, or exploitation including: (1) arresting the abusing, neglecting, and exploiting party, *where appropriate*." (Emphasis added.) 750 ILCS 60/304(a)(1) (West 2018). Both the Act and the Domestic Violence Protocol make very clear that arrests should be made only after an investigation, considering both parties' input, as well as the dynamics of the relationship. See 750 ILCS 60/301.1(b) (West 2018) (law enforcement policies). The false testimony by Carbray that he had to arrest defendant undercut defendant's theory of the case that he was arrested because he was Jeff Ward, who is critical of the Geneva Police Department. This testimony was intentionally elicited by the State. At argument on defendant's posttrial motion, the defense finally realized that Carbray's testimony was not true. Defense counsel argued that prejudicial error occurred when Carbray "said in the trial that he had no discretion." In response to this argument, the prosecutor doubled down and argued, "[p]ursuant to 750 ILCS 60/304(a)(2), it actually cites to how when a police officer observes an act of domestic violence he is *required* to make an arrest." (Emphasis added.) This argument, like Carbray's testimony, is false. It should never have been presented during trial. The American Bar Association's compiled list of "Domestic Violence Arrest Policies by State" lists Illinois as "Officer's Discretion." American Bar Ass'n Comm'n on Domestic & Sexual Violence, Domestic Violence Arrest Policies (Mar. 2014), https://www.americanbar.org/content/dam/aba/administrative/ domestic_violence1/Charts/Migrated_charts_2014_Domestic_Violence_Arrest_Policy_ Chart.pdf [https://perma.cc/U9XA-PYWL]. The trial court should have disregarded Carbray's testimony regarding arrest policies. *People v. Jimerson*, 166 Ill. 2d 211, 223 (1995) (use of false testimony to secure a conviction violates due process).

¶ 71    Another problematic area was the testimony of both Officer Hann and Carbray that police officers sometimes sign the complaint in a domestic violence case because the victim is reluctant for various reasons to sign a complaint. Carbray testified that it is "[b]ecause the spouse requires something from the other spouse; be it housing, money, they want to rectify, they don't want to ruin whatever is going on inside the family for the kids. So often that can be the case." This testimony was highly improper and prejudicial. Only an expert on domestic violence syndrome would be qualified to give this type of testimony. See Cynthia Lynn Barnes,

- 19 -

Annotation, *Admissibility of Expert Testimony Concerning Domestic Violence Syndrome to Assist Jury in Evaluating Victim's Testimony or Behavior*, 57 A.L.R.5th 315 (1998). Carbray was not qualified as an expert. As such, this testimony should not have been considered by the trial court in ruling on the motion for a directed verdict.

¶ 72 Carbray was allowed to repeatedly insist that he witnessed a domestic battery. This was his opinion, unsupported by any facts that would reveal what defendant was thinking or how Leslie felt about the push, other than that they both insisted no crime had occurred. A witness may not testify to the state of mind of another person. *Law v. Central Illinois Public Service Co.*, 86 Ill. App. 3d 701, 706 (1980). A witness may testify that "a person was nervous, excited, or upset." *Id.* Without any such emotion being exhibited by Leslie, it was impossible for Carbray to know how Leslie felt about being pushed. Carbray acknowledged that both Leslie and defendant told him that they did not understand why defendant was being arrested. The trial court should have disregarded Carbray's opinion.

¶ 73 Finally, during the cross-examination of Carbray, the defense brought out that one of the Geneva Police Department's contacts with defendant involved an investigation of a firebombing to the Ward home and defendant's truck. Defendant was upset with the way that the Geneva Police Department handled the investigation. The defense also brought out that a call to the Ward home involved defendant's complaint about loud helicopter noise from nearby Delnor Hospital. The defense did not bring out any information regarding past arrests or calls related to any domestic violence. Yet on redirect examination, the prosecutor elicited the following prejudicial testimony:

> "PROSECUTOR: Was there an individual ultimately arrested for that fire bombing of the defendant's residence?
>
> CARBRAY: Yes, there was.
>
> PROSECUTOR: On each and every occasion that you responded to the defendant in the past, as asked on cross examination, was he arrested every single time?
>
> CARBRAY: No, he was not."

¶ 74 This testimony implied that defendant had committed prior offenses. This, combined with Carbray's testimony that the arrest of defendant was "for the safety and protection of the victim," leads to an improper inference that Leslie needed protection from defendant, despite her testimony that he has "never" hurt her. Of course, if there had been prior acts of domestic violence by defendant against Leslie, they would have been admissible to establish defendant's propensity to abuse Leslie and to explain why she showed no reaction to the push. See *People v. Dabbs*, 239 Ill. 2d 277 (2010) (admissibility of prior acts of domestic violence under section 115-7.4 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-7.4 (West 2008)). The State knew that defendant had "no criminal history," but it improperly fed the jury an inference that he did have a history. It is improper to intimate that a defendant has a prior criminal history. See *People v. Ray*, 126 Ill. App. 3d 656, 662 (1984).

¶ 75 The dissent argues that this court is advocating for defendant because a number of these issues were not raised by him previously: the various evidentiary matters, the misconduct by the State, and the misstatements of law. *Infra* ¶¶ 115-20. The errors we have identified should have been recognized and addressed by the trial court. *Ray*, 126 Ill. App. 3d at 664. As we have stated, our review is *de novo*; therefore we have the same authority and obligation to review the evidence and comment on it as the trial court. *Connolly*, 322 Ill. App. 3d at 917. Again, in

ruling on a motion for a directed verdict, the trial court is to consider only the *competent* evidence that has been received. *Troup*, 315 Ill. at 298. Reviewing courts also have the authority to address clear and obvious errors in trial court proceedings. *People v. Givens*, 237 Ill. 2d 311, 325 (2010); Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court."). In this case, the argument by the State that it was not required to prove that Leslie was insulted or provoked, which was accepted by the trial court and argued to the jury, was a clear and obvious error. What Leslie felt and thought did matter. The dissent must acknowledge that, even if the evidence was sufficient, this was a closely balanced case. It appears that the dissent is not bothered by the misstatements of the law the State made throughout the prosecution of this case, even though they constitute a clear and obvious error that we may recognize even if it was not briefed by the parties. The dissent suggests that our holding is that "the State's proof must include evidence of the victim's emotional reaction to the contact." *Infra* ¶ 92. We do not conclude that in every case the State must include evidence of the victim's emotional reaction. However, in this case, given the harmless nature of the contact, where all of the competent evidence showed that Leslie was not insulted or provoked in any way, the State's argument was based on pure speculation.

¶ 76     After proposing that, "in the absence of evidence of the victim's subjective reaction, the facts may still be sufficient for a conviction where the defendant's contact would be insulting or provoking to a reasonable person" (*infra* ¶ 96), the dissent eventually cites *People v. Green*, 2016 IL App (2d) 140920-U, contending that the similarities between that case and the instant matter should persuade us to affirm defendant's convictions. However, *Green* is easily distinguishable. In *Green*, the trial evidence showed that the victim—the defendant's mother-in-law—was pushed while trying to protect her daughter from the defendant, who was drunk. *Id.* ¶¶ 3-5. No evidence suggested that the victim told police that she did not want the defendant to be arrested, and she gave a written statement acknowledging that the defendant had pushed her while trying to "get to" her daughter. *Id.* In short, the circumstances present in *Green* clearly supported an inference that the contact was insulting or provoking, in contrast to the relatively benign circumstances present here.

¶ 77     On appeal, the defendant in *Green* primarily theorized that there was insufficient evidence of any contact between the defendant and the victim. *Id.* ¶ 9. As an alternative argument, the defendant posited that, even if the State did prove that there was contact, it failed to show that the contact was insulting or provoking. *Id.* ¶ 10. However, the court noted that, in her written statement to police, the victim acknowledged—in no uncertain terms—that the defendant made physical contact with her. *Id.* ¶ 9. Unlike the victim in *Green*, here, Leslie made no inconsistent statements to police that would undermine her testimony that she was not insulted or provoked by defendant's contact. Contrary to *Green*, here, the police even corroborated Leslie's testimony that she was not offended in any way and that her husband did nothing wrong. The dissent speculates different reasons behind Leslie's "stoic" testimony, going so far as to suggest that "[p]erhaps she knew better than to further inflame defendant." *Infra* ¶ 108. However, this is only speculation. The absence of evidence should not be treated as evidence in and of itself.

¶ 78     Furthermore, no portion of the *Green* decision supports the dissent's suggestion that "the facts may still be sufficient for a conviction where the defendant's contact would be insulting or provoking to a reasonable person." *Infra* ¶ 95. In fact, *Green* contradicts this notion. Citing

*Fultz*, the *Green* court noted that " '[t]he victim does not have to testify he or she was provoked; the trier of fact can make *that inference* from the victim's reaction at the time.' " (Emphasis added.) *Green*, 2016 IL App (2d) 140920-U, ¶ 10 (quoting *Fultz*, 2012 IL App (2d) 101101, ¶ 49). This language suggests that, even where a victim has not testified that he or she was provoked or insulted, other evidence must establish as much. See *id.* The court never mentioned that a reasonable-person standard should be utilized when the evidence concerning provocation is otherwise lacking.

¶ 79        The dissent states that, in *Fultz*, "[w]e also considered that the onlookers were 'upset' that the police were arresting the defendant." *Infra* ¶ 94 (citing *Fultz*, 2012 IL App (2d) 101101, ¶ 47). What we actually said was, "For example, the officers testified that, when they tried to arrest *Jackson*, the persons at the scene were upset." (Emphasis added.) *Fultz*, 2012 IL App (2d) 101101, ¶ 47. In *Fultz*, one of the persons at the scene who was upset about the police attempting to arrest Jackson was the defendant's mother. *Id.* When the police tried to arrest defendant's mother for obstructing the arrest of Jackson, the defendant physically interfered by blocking the path to his mother and placing his hands on the victim's chest. *Id.* ¶ 25. According to the defendant's own testimony, the police arrested him immediately after the contact occurred, although he denied making contact with the victim. *Id.* ¶ 28.

¶ 80        The dissent implies that, in this case, "absent the victim's reaction," we would find the evidence to be "insufficient to prove the insulting-or-provoking element of domestic battery." *Infra* ¶ 98. Contrary to the dissent's implication, we simply said that testimony regarding "how Leslie Ward appeared or reacted after the push would have been relevant." *Supra* ¶ 65. Leslie's reaction was the opposite of the victim's reaction in *DeRosario*, where the victim "got up and called the police." *DeRosario*, 397 Ill. App. 3d at 333. The record shows throughout that Leslie acted as if, and testified consistently that, she was not insulted or provoked. Additionally, no other witnesses referenced nonverbal actions or communications that would contradict her testimony that she was not insulted or provoked. Furthermore, unlike in *DeRosario*, the witnesses who observed or interacted with Leslie corroborated her testimony that she was not insulted or provoked.

¶ 81        The dissent argues that the defense "opened the door" to Carbray's testimony regarding defendant's character. *Infra* ¶ 116. We disagree. The dissent provides no support for this contention. The argument that the evidence supports Carbray's opinion that defendant is a "bully" illustrates why it was prejudicial and should not have been considered by the trial court. Again, it is improper for the State to introduce evidence of a defendant's bad character until the defendant introduces evidence of good character. *Lucas*, 151 Ill. 2d at 483-84; see *supra* ¶ 69.

¶ 82        The dissent misperceives our analysis. We did not "search the record for reasons to reverse." See *infra* ¶ 118. Defendant preserved his argument that the trial court erred by denying his motion for a directed verdict. In his brief, defendant argues that the sufficiency of the evidence should be reviewed *de novo* "because it involves a legal question of whether the offense of (domestic) battery by insulting or provoking conduct can be proven *where the only person insulted was a* witness and *not the alleged victim*." (Emphases in original.) Defendant goes on to argue that, "since there was *no evidence* or testimony whatsoever that the victim felt intimidated, surprised, startled, alarmed, offended, insulted, or provoked in any way, the evidence was simply not sufficient to support a charge of (domestic) battery against Mr. Ward and the case should not have been sent to the jury." (Emphasis in original.) Defendant argues,

- 22 -

as we have found, that the evidence was insufficient as a matter of law because there was no evidence to prove that Leslie was "actually insulted by the actions of her husband." We have not violated the principles set forth in *Givens*, 237 Ill. 2d at 323. In that case, the appellate court reversed the defendant's conviction of possession of a controlled substance based upon a consent-to-search issue, where the defendant did not file a motion to suppress. *Id.* at 325. The supreme court stated that the defendant had the burden to file a motion to suppress prior to trial and that "[w]hether defendant would have prevailed on such a motion would have been a mixed question of law and fact, with the trier of fact assessing and judging the credibility of the witnesses." *Id.* In this case, our review is *de novo*, and the issue was clearly preserved. We are also mindful of the principle that a reviewing court may search the record for reasons to affirm the trial court's ruling. We have done so here and have found none.

¶ 83 Having reviewed the competent evidence in the light most favorable to the State, we find that the "evidence overwhelmingly favored defendant such that the jury could not have concluded otherwise." *Rascher*, 223 Ill. App. 3d at 854. The trial court erred in denying defendant's motion for a directed verdict.

¶ 84                                    III. CONCLUSION
¶ 85 For the reasons stated herein, defendant's conviction is reversed.

¶ 86 Reversed.

¶ 87 JUSTICE ZENOFF, concurring in part and dissenting in part:

¶ 88 I concur that this court does not have the authority to overrule our supreme court's order assigning a judge of the Fifteenth Judicial Circuit to preside over this case. However, I respectfully dissent from the majority's decision to reverse defendant's conviction of domestic battery. I disagree that the statute requires the State to present evidence of the victim's emotional reactions to being insulted or provoked. I also disagree that this court should, *sua sponte*, raise evidentiary issues on defendant's behalf, as it has done here, disregarding the stricture that it is not the role of the reviewing court " 'to act as an advocate or seek error in the record.' " *Habitat Co. v. Peeples*, 2018 IL App (1st) 171420, ¶ 48 (quoting *U.S. Bank v. Lindsey*, 397 Ill. App. 3d 437, 459 (2009)).

¶ 89 I feel compelled to clarify the parties' contentions in this appeal, because the majority bases its analysis partly on what the State argued below, not what it argues here. The State argued before the trial court that it is *only* the nature of the act that determines whether a defendant's conduct is insulting or provoking. However, the State abandons that argument here and instead acknowledges that " 'a particular physical contact may be deemed insulting or provoking based upon the *factual context* in which it occurs' " (emphasis added) (quoting *People v. Peck*, 260 Ill. App. 3d 812, 814 (1994), and citing *Fultz*, 2012 IL App (2d) 101101, ¶ 49). In *Fultz*, we recognized that, where the victim of a battery fails to testify that he or she is insulted or provoked, we consider the "context" in which the defendant's contact occurred. *Fultz*, 2012 IL App (2d) 101101, ¶ 49. Thus, the State's argument on appeal is not at odds with our prior decisions.

¶ 90 The majority states that I am not "bothered" by the "misstatements of law by the State throughout the prosecution of this case." *Supra* ¶ 75. However, arguments on appeal are framed

by the parties' briefs. *People v. Givens*, 237 Ill. 2d 311, 323 (2010) (reviewing court does not search the record for unargued and unbriefed reasons to reverse the lower court (citing *Parks v. McWhorter*, 106 Ill. 2d 181, 184 (1985))), and the majority points to no argument that the State makes on appeal that it considers improper. The majority is waging a battle in a war that does not exist.

¶ 91 More importantly, defendant's sole contentions on appeal with respect to the directed verdict ruling are that (1) Leslie testified that she was not insulted or provoked and (2) defendant's act did not constitute insulting or provoking contact. Defendant does not raise any evidentiary issues or argue that the trial court based its ruling on incompetent evidence. The appellate court "[relies] on the parties to frame the issues for decision," and we remain neutral arbiters of matters that the parties present. (Internal quotation marks omitted.) *Givens*, 237 Ill. 2d at 323. Our adversary system is "designed around the premise that the parties know what is best for them," and they are "responsible for advancing the facts and arguments entitling them to relief." (Internal quotation marks omitted.) *Givens*, 237 Ill. 2d at 324.

¶ 92                                A. The Domestic Battery Statute

¶ 93 I agree with the majority's interpretation of the domestic battery statute (720 ILCS 5/12-3.2(a)(2) (West 2018)), insofar as the majority holds that (1) there must be evidence from which the trier of fact can logically infer that the victim was insulted or provoked, (2) domestic battery based on physical contact of an insulting or provoking nature can be proved by acts and circumstances surrounding the defendant's conduct, even where the victim denies being insulted or provoked, and (3) there are certain types of contact—such as being spat upon or having a substance thrown on an individual—that allow for an inference that the victim was insulted or provoked. I disagree that, in those cases in which the inference of being insulted or provoked is not available—or where the victim either does not testify that he or she was insulted or provoked or denies being insulted or provoked—the State's proof must include evidence of the victim's emotional reaction to the contact.

¶ 94 The offenses of battery and domestic battery are not identical. *People v. Pickens*, 354 Ill. App. 3d 904, 914 (2004). Our supreme court has recognized that violence in a domestic relationship differs from violence between strangers. *People v. Gray*, 2017 IL 120958, ¶ 65. The domestic battery statute "prohibits one family member from battering another family member." *People v. Taher*, 329 Ill. App. 3d 1007, 1015-16 (2002). The legislature's goal was "ultimately to protect family and household members from physical contact of an insulting and provoking nature made by" other family or household members. *Pickens*, 354 Ill. App. 3d at 917. " 'The legislature's obvious concern in enacting the domestic battery statute was in curbing the serious problem of domestic violence.' " *Gray*, 2017 IL 120958, ¶ 62 (quoting *People v. Wilson*, 214 Ill. 2d 394 (2005)). The focus of the domestic battery statute is on prohibiting "inappropriate" contact between family or household members. *Pickens*, 354 Ill. App. 3d at 917. "[A]ccessibility and familiarity enable domestic violence to be ongoing and to effectively intimidate and control the victim." *Gray*, 2017 IL 120958, ¶ 65. Thus, in *Gray*, where the defendant was convicted of aggravated domestic violence, our supreme court upheld as constitutional the statute's absence of any time limits on former dating relationships. *Gray*, 2017 IL 120958, ¶ 65. Because victims of domestic violence often feel a sense of loyalty to their abusers, they may protect the abusive family member by denying, minimizing, or recanting their earlier reports of domestic violence. *People v. Brown*, 94 P.3d 574, 577 (Cal.

2004). Mindful of these concerns, I believe that, where the victim denies at trial that he or she was insulted or provoked, that denial goes to the weight and credibility that the trier of fact wishes to give the State's otherwise sufficient evidence.

¶ 95 "Otherwise sufficient evidence," in my view, includes the victim's emotional reaction, if any, but also includes the nature of the contact. In *Fultz*, where the victim did not testify to being insulted or provoked, we considered not just the victim's reaction to the defendant's contact (the victim pushed the defendant aside) but also the nature of the defendant's contact (the defendant stepped in front of the victim with his arms extended, intending to stop the victim's forward movement). *Fultz*, 2012 IL App (2d) 101101, ¶ 50. We also considered that the onlookers were "upset" that the police were arresting the defendant. *Fultz*, 2012 IL App (2d) 101101, ¶ 47. Thus, the reaction of third parties is relevant to the context in which the defendant's contact occurs.

¶ 96 "Context" means the "interrelated conditions in which something exists or occurs." Merriam-Webster Third New World Dictionary 492 (1993). As demonstrated in *Fultz*, those "interrelated conditions" may include both subjective and objective factors. As I will discuss (*infra* ¶ 112), *Fultz* did not hold that evidence of the victim's reaction is the sole alternative to the victim's testimony that he or she was not insulted or provoked. Therefore, I submit that, in the absence of evidence of the victim's subjective reaction, the facts may still be sufficient for a conviction where the defendant's contact would be insulting or provoking to a reasonable person. Otherwise, the legislature would have provided not that the contact be of an insulting or provoking "nature" but only that the contact insult or provoke the victim. Under the majority's interpretation of the statute, the legislature's provision that the physical contact be of an insulting or provoking "nature" is superfluous. In interpreting a statute, courts are not at liberty to render any part meaningless or superfluous. *Policemen's Benevolent Labor Committee v. City of Sparta*, 2020 IL 125508, ¶ 14.

¶ 97 The majority holds that the State's proof in the instant case was insufficient "[w]ithout any evidence [of] Leslie's reaction, either direct or circumstantial, that would allow for an inference that she was insulted or provoked." *Supra* ¶ 67. The majority so concludes based upon an erroneous reading of our opinion in *People v. DeRosario*, 397 Ill. App. 3d 332 (2009).

¶ 98 In *DeRosario*, we held that the defendant's contact with the victim, which would be innocent in another context, constituted domestic battery when we considered the circumstances surrounding the contact and the parties' relationship. *DeRosario*, 397 Ill. App. 3d at 334-35. At trial, the victim testified that the defendant's contact caused her to feel scared, uncomfortable, and mad. *DeRosario*, 397 Ill. App. 3d at 334.

¶ 99 The majority in this case concludes that it was "the context *along with* the victim's reaction" in *DeRosario* that "made the contact insulting or provoking." (Emphasis added.) *Supra* ¶ 55. In other words, the majority implies that, absent the victim's reaction, the remaining evidence in *DeRosario* would have been insufficient to prove the insulting-or-provoking element of domestic battery.

¶ 100 In *DeRosario*, the parties were in a failed relationship, and the defendant was stalking the victim. *DeRosario*, 397 Ill. App. 3d at 334. The defendant sat and stared at the victim for long periods of time. *DeRosario*, 397 Ill. App. 3d at 334. During the incident in question, the defendant purposely sat close to the victim in an uncrowded smoking room, where he brushed her back with his knee. *DeRosario*, 397 Ill. App. 3d at 332, 334. In context, this behavior— even without evidence of the victim's emotional reaction—would be sufficient to constitute

insulting or provoking contact, because a reasonable person would be insulted or provoked where the defendant (1) had a failed relationship with the victim, (2) stalked the victim, (3) stared at the victim for prolonged periods of time, (4) purposely chose to sit behind the victim in an uncrowded room, and (5) brushed his knee against the victim's back.

¶ 101    Without a reasonable-person standard, we would sanction absurd results. In *People v. Dunker*, 217 Ill. App. 3d 410 (1991), for example, the defendant verbally berated his child's teacher in the school's parking lot, poked her in the sternum, yelled profanities at her, threw her papers, threatened to run her over with his car, and then drove away from her in a manner that caused her to jump back to avoid being struck by his car. *Dunker*, 217 Ill. App. 3d at 412. At trial, the victim testified that she left the parking lot crying and that she was "shocked" by what happened. *Dunker*, 217 Ill. App. 3d at 413. Had the victim denied that she was insulted or provoked and had she not testified to her emotional reaction, under the majority's analysis, the defendant's contact would not be insulting or provoking, notwithstanding its objectively outrageous nature.

¶ 102    Thus, where the victim denies being insulted or provoked, I do not believe that the victim's reaction can be a *sine qua non* for proving the insulting-or-provoking element of domestic battery. I believe that we must examine the remaining facts. Furthermore, if a victim displays no reaction, there could be valid reasons for that. Victims of domestic violence might not show outward emotion because of stoicism, fear of reprisal, pride, shame, humiliation, or even feelings of guilt and self-loathing.

¶ 103    I view the majority's requirement that the victim of domestic violence must display an emotional reaction when the contact occurs as detrimental to the prosecution of well-founded domestic battery cases. This requirement will result in fewer convictions in cases that could otherwise be proved beyond a reasonable doubt. As it is, prosecutors in domestic violence cases face unique challenges, including recalcitrant victims, victims who recant previous statements, and victims whose credibility is subject to question because they stayed in the abusive relationship. *Brown*, 94 P.3d at 577-78.

¶ 104    The majority creates a standard that is so subjective that it will be impossible to apply consistently or fairly. Individuals' life experiences, emotional makeup, and reactions vary. What kinds of reactions are sufficient to sustain a conviction of domestic battery when the victim denies being insulted or provoked? In my view, the majority's emotional-reaction rule punishes victims and flies in the face of the legislature's goal, which is to curb the serious problem of domestic violence. See *Gray*, 2017 IL 120958, ¶ 62 (" 'The legislature's obvious concern in enacting the domestic battery statute was in curbing the serious problem of domestic violence.' " (quoting *Wilson*, 214 Ill. 2d at 402-03)).

¶ 105    Here, I believe that the judge, in ruling on the motion for a directed verdict, could find that Leslie was insulted or provoked, because the nature of defendant's contact, when considered in context, would insult or provoke a reasonable person. In moving for a directed verdict, the defendant admits the truth of the facts as presented by the State's evidence. *People v. Connolly*, 322 Ill. App. 3d 905, 915 (2001). Here, those facts include that (1) Leslie was defendant's wife, (2) defendant was agitated and used foul language in addressing the police, (3) Carbray asked Leslie Matthew's age and she replied, (4) defendant screamed "shut up" at Leslie, (5) defendant pushed Leslie out of his way with both hands hard enough that she stumbled before regaining her balance, and (6) defendant's conduct "shocked" Stilling.

¶ 106    Defendant argues that this evidence was insufficient to prove that his conduct was insulting. The statute does not define "insulting." Defendant argues that its plain and ordinary meaning, as defined by Webster's Dictionary, is "to treat with insolence, indignity, or contempt." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/insult#h1 (last visited June 29, 2021) [https://perma.cc/W4B6-HJNG]. Defendant asserts that his conduct did not rise to that level. Accepting defendant's definition, a reasonable mind could fairly conclude defendant's guilt. For purposes of the motion for a directed verdict, defendant admits that he pushed Leslie with both hands, causing her to stumble, after he screamed "shut up" at her. A reasonable mind could certainly conclude that such conduct toward one's spouse was contemptuous, insolent, and intended to treat her with indignity, especially as it was performed in anger and in front of onlookers, one of whom was shocked by defendant's conduct. The evidence most favorable to the State shows that defendant was angry, not only with the officers but also with Leslie for having answered Carbray's question.

¶ 107    The majority concludes that Stilling's reaction was irrelevant because the statute requires the victim, not a third party, to be insulted or provoked. Stilling's reaction was relevant to show that defendant's "push" was more than an innocent tap on the shoulder and that a reasonable person would be insulted by such contact.

¶ 108    The majority emphasizes that, according to Leslie's testimony, defendant held onto her so that she would not fall as he pushed her aside. The majority characterizes this testimony as "unimpeached." Unimpeached though it may be, it is nevertheless contradicted. Stilling testified that Leslie took two or three steps, then "stumbled." Hann testified that Leslie took "several steps" to "regain her balance and stay on her feet."

¶ 109    The record shows that the prosecutor did not ask the witnesses whether Leslie displayed any reaction. Thus, the record does not affirmatively indicate that she had no reaction. Even if she had none, there could be many reasons. Likely, she was more antagonistic toward the police than toward defendant. Perhaps she was more concerned with her son's accident than what else was happening. Perhaps she knew better than to further inflame defendant. Perhaps she is a person who shows no outward emotion.

¶ 110    This case is unlike *People v. McDowell*, 2015 IL App (2d) 140301-U. In *McDowell*, the defendant, while intoxicated and fighting his way through a crowd to get to his antagonist, Matt Byrne, accidentally pushed his wife, who fell to the ground. *McDowell*, 2015 IL App (2d) 140301-U, ¶¶ 21, 48. Further, Byrne, who testified that the victim was crying after the incident, was deemed unworthy of belief. 2015 IL App (2d) 140301-U, ¶ 48. Here, by contrast, defendant, who was sober, intentionally pushed Leslie in anger after she answered Carbray's question about her son's age. It is reasonable to infer that, when defendant arrived on the scene, his primary target was the police but that, as soon as Leslie cooperated with the police, she became defendant's target as well.

¶ 111    Our reasoning in *People v. Green*, 2016 IL App (2d) 140920-U, is particularly apt. See *Byrne v. Hayes Beer Distributing Co.*, 2018 IL App (1st) 172612, ¶ 22 (the appellate court may adopt the reasoning in an unpublished order). In *Green*, the defendant was charged with making physical contact of a provoking nature by pushing his body into his mother-in-law, Christine, to " 'force her out of the way.' " *Green*, 2016 IL App (2d) 140920-U, ¶ 3. After the incident, Christine stated to the police that she had argued with the defendant, who was drunk, about driving. *Green*, 2016 IL App (2d) 140920-U, ¶ 5. Christine told the police that when her daughter, Melissa, came running out of the house, yelling at the defendant, he tried to "get to"

Melissa. *Green*, 2016 IL App (2d) 140920-U, ¶ 5. Christine stated to the police that she stepped between the defendant and Melissa and that the defendant then " 'used his body pushing into me trying to move me out of the way.' " *Green*, 2016 IL App (2d) 140920-U, ¶ 5. At trial, Christine's statement to the police was introduced as substantive evidence. *Green*, 2016 IL App (2d) 140920-U, ¶ 9.

¶ 112    At trial, Christine testified that the defendant "did nothing to her," and she denied that he had tried to push her out of the way. *Green*, 2016 IL App (2d) 140920-U, ¶ 3. An eyewitness also testified that the defendant did not push Christine. *Green*, 2016 IL App (2d) 140920-U, ¶ 3. Nevertheless, the jury convicted the defendant of domestic battery. *Green*, 2016 IL App (2d) 140920-U, ¶ 2. On appeal, the defendant argued that the evidence was insufficient to establish that his contact, if any, with Christine was insulting or provoking where Christine (1) denied being insulted or provoked and (2) the State failed to prove Christine's reaction to the defendant's conduct. *Green*, 2016 IL App (2d) 140920-U, ¶ 10. We held that the evidence was sufficient, taking into account the context in which the defendant's contact occurred. *Green*, 2016 IL App (2d) 140920-U, ¶ 10. We stated that, "[i]n context, the jury could infer that the contact was an act of physical aggression that could be deemed insulting or provoking." *Green*, 2016 IL App (2d) 140920-U, ¶ 10. In so holding, we looked at the nature of the act and rejected the defendant's argument that *Fultz* requires proof of the victim's reaction. *Green*, 2016 IL App (2d) 140920-U, ¶ 10. We stated: "Neither *Fultz* nor [*People v. Wrencher*, 2011 IL App (4th) 080619, upon which we relied in *Fultz*,] held that evidence of the victim's reaction is the sole alternative to the victim's testimony that he or she was insulted or provoked." *Green*, 2016 IL App (2d) 140920-U, ¶ 10. In my view, this court's analysis in *Green* is more cogent, and certainly more prudent given the concerns to be addressed by the statute, than the majority's reasoning in the present case.

¶ 113    In attempting to distinguish *Green*, the majority first misapprehends the facts in that case. According to the majority, "No evidence suggested that [Christine] told police that she did not want the defendant to be arrested ***." *Supra* ¶ 76. However, Christine testified at trial as follows: " 'I said [to the police] that I didn't want to press charges, and I was told by the police that I didn't have a choice, that the State took it upon themselves [*sic*] to press charges.' " *Green*, 2016 IL App (2d) 140920-U, ¶ 4. The majority notes that, in *Green*, Christine gave a written statement in which she said that the defendant pushed her. See *supra* ¶ 76. In this case, Leslie admitted that she stepped between defendant and one of the police officers, and she also admitted the contact with defendant, although she minimized it. The only difference between our case and *Green* is that Leslie's admissions were made during her trial testimony rather than in an out-of-court written statement. The majority states that Leslie, unlike Christine, made no prior inconsistent statements undermining her testimony that she was not insulted or provoked. See *supra* ¶ 76. Yet, in Christine's written statement in *Green*, she said only that she stepped between Melissa and the defendant and that the defendant " 'used his body pushing into me trying to move me out of the way.' " *Green*, 2016 IL App (2d) 140920-U, ¶ 5. In her written statement, Christine never hinted at any emotional reaction to this contact, nor did any other evidence reflect that she registered such a reaction. It was this very lack of proof of Christine's emotional reaction that formed one of the defendant's arguments for reversal of his conviction. *Green*, 2016 IL App (2d) 140920-U, ¶ 10.

¶ 114    Next, the majority notes that *Green* does not mention a reasonable-person standard. See *supra* ¶ 78. However, in *Green*, the court did not hold, as the majority does here, that the

- 28 -

victim's emotional reaction is a *sine qua non* where the inference of being insulted or provoked is not available or where the victim either does not testify that he or she was insulted or provoked or denies being insulted or provoked.

### B. Evidentiary Issues Are Not Properly Before Us

¶ 116    The second basis for my dissent is that the majority *sua sponte* decides that evidence of defendant's prior contacts with the Geneva police and Carbray's testimony that he was obliged to arrest defendant should have been excluded as incompetent and prejudicial. Defendant does not raise this issue, undoubtedly because he, not the State, introduced evidence of his prior police contacts. The majority raises it for defendant under the guise of *de novo* review. However, the *de novo* standard of review means that the reviewing court does not defer to the trial court's reasoning. *People v. Tyler*, 2015 IL App (1st) 123470, ¶ 151. In my view, this lack of deference is not permission to advocate for defendant.

¶ 117    In effect, the majority advocates that defense counsel rendered ineffective assistance in presenting the evidence of defendant's prior police contacts as a defense. Defendant's theory was that the Geneva police were biased against him. Defendant thus intentionally opened the door to Carbray's testimony that he did not like defendant and considered him a bully but that he did not arrest him because of that bias. Any rational trier of fact could have concluded that the term "bully" was supported by the evidence of defendant screaming the most vulgar profanities in the officers' faces, telling his wife to "shut up," and shoving her for answering an officer's question.[8]

¶ 118    It is well settled that, except for assessing the court's jurisdiction, the reviewing court cannot search the record for unbriefed and unargued reasons to reverse a trial court's judgment. *Givens*, 237 Ill. 2d at 323. Although we have limited power to raise unbriefed issues, we must refrain from doing so when it transforms the court's role from that of jurist to advocate. *Givens*, 237 Ill. 2d at 328. Here, defendant did not raise any evidentiary issues in connection with the motion for a directed verdict, *before either the trial court or this court*. Thus, the majority is not, as it posits, performing the same examination as the trial court.

¶ 119    Nor is the trial court at liberty to advocate for a party, as the majority suggests (*supra* ¶ 75). The trial court, when examining a witness, for instance, "must not depart from its function as a judge and may not assume the role as an advocate for either party." *In re Tamesha T.*, 2014 IL App (1st) 132986, ¶ 26. I have not found a case requiring a trial court to raise evidentiary

___

[8]The majority leaves the reader with the impression that the officers were as much responsible for what the majority terms a "verbal altercation" as was defendant. I disagree that the record supports this characterization. Hann was conducting his traffic investigation when defendant arrived on the scene and, with no provocation, began screaming obscenities at the officer. Because of defendant's conduct, Hann called his sergeant, Carbray, to the scene. As soon as Carbray arrived, again with no provocation, defendant screamed obscenities at Carbray. Carbray instructed Hann to complete his investigation while Carbray dealt with defendant. Carbray did not place defendant in handcuffs until after defendant pushed Leslie and then further escalated the situation with more verbal abuse toward the sergeant. Further, even if Carbray was mistaken as to whether the law required him to arrest defendant on the spot, I do not believe that the record supports the inference that Carbray intentionally lied to the jury. At the directed verdict stage, this was not a credibility contest, in any event. See *Connolly*, 322 Ill. App. 3d at 915 ("The trial judge does not pass upon the weight of the evidence or the credibility of the witnesses in testing the sufficiency of the evidence to withstand a motion for a directed verdict.").

issues on a party's behalf, and the majority cites none. *People v. Ray*, 126 Ill. App. 3d 656, 659-60 (1984), cited by the majority, involved repeated prosecutorial misconduct during closing argument. In *Ray*, the State's rebuttal closing argument was a "litany of remarks so vituperative and inflammatory that they could only have created an atmosphere inimical to the even-handed dispensation of justice and thus resulted in prejudice to [the] defendant." *Ray*, 126 Ill. App. 3d at 659-60. As an example, the prosecutor in *Ray* accused defense counsel 16 times of lying. *Ray*, 126 Ill. App. 3d at 660. The prosecutor told the jury that the defendant's cloak of innocence was gone and that the hand of guilt pointed at the defendant. *Ray*, 126 Ill. App. 3d at 661. The prosecutor also intimated that the defendant had a criminal history and argued that the defendant did not confess only because he was too crafty and streetwise. *Ray*, 126 Ill. App. 3d at 662. The prosecutor argued that the defendant's year of hiding behind the shield of the constitution was "over." *Ray*, 126 Ill. App. 3d at 662. The appellate court labeled these remarks "inflammatory in the extreme." *Ray*, 126 Ill. App. 3d at 660. It was in this context that the court stated: "[R]esponsibility for restraining prosecutorial misconduct rests *** with the circuit court." *Ray*, 126 Ill. App. 3d at 664. No case could be more inapposite to our facts than *Ray*.

¶ 120     Further, it is unnecessary to the majority's holding to resolve unbriefed and unargued evidentiary issues, as the majority rests its decision on the basis that, absent any evidence of Leslie's reaction, the State failed to prove that Leslie was insulted or provoked.[9] Accordingly, for all of the above reasons, I would hold that the evidence was sufficient to withstand the motion for a directed verdict.

---

[9]Ultimately, the majority's stated rationale for reversing rests on its interpretation of the statute. However, the majority posits that "this was a closely balanced case" (*supra* ¶ 75), even though the sufficiency of the evidence to convict is not addressed in this opinion. The majority then links its view that this case is "closely balanced" to its view that the State's arguments before the trial court and the jury prejudiced defendant. See *supra* ¶ 75. Thus, the majority's unstated rationale for reversal is based on issues that the majority raises *sua sponte* and that the State has not had the opportunity to address.