2022 IL App (2d) 220130-U
No. 2-22-0130
Order filed December 6, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kendall County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20-CM-460 |
| MICHAEL L. THOMAS, | ) ) ) | Honorable Stephanie P. Klein, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court.
Justices McLaren and Hutchinson concurred in the judgment.

**ORDER**

¶ 1   *Held*: Defendant was properly convicted of domestic battery based on insulting or provoking contact where the evidence showed that defendant and his friend carried the intoxicated victim without her consent from a neighbor's trailer to defendant's trailer. The State was not required to prove that defendant intended to insult or provoke, but only that he knew his actions would insult or provoke.

¶ 2   Defendant, Michael L. Thomas, was charged with two counts of domestic battery (720 ILCS 5/12-3.2 (West 2020)). Count I alleged that defendant knowingly caused bodily harm to Savanna Clark. *Id.* § 12-3.2(a)(1)). Count II alleged that defendant knowingly made physical contact of an insulting nature with Clark. *Id.* § 12-3.2(a)(2). Following a bench trial in the circuit

court of Kendall County, defendant was found not guilty of count I, but guilty of count II. The trial court sentenced defendant to a 12-month term of conditional discharge. Defendant argues on appeal that the State failed to prove his guilt beyond a reasonable doubt. We affirm.

¶ 3                                     I. BACKGROUND

¶ 4     At trial, Clark testified that she and defendant were formerly in a dating relationship. On September 25, 2020, they lived together in a trailer in Yorkville. She had been drinking throughout the day, from when she woke up at about noon. She had two beers and two shots of vodka, and took buspirone and Valium. That evening, she visited a neighbor, Michael Green. Clark and Green sat on the couch and talked while the television was on. At some point, the trailer door flew open. Clark did not remember who opened the door; she just remembered seeing "both Mikes" (*i.e.*, defendant and Green). She was not sure what happened next, but she remembered that defendant said something and then she was outside the trailer. She testified that she "was told" that she had been dragged out of the trailer, but the trial court sustained defendant's hearsay objection to that testimony. Clark then testified that she independently recalled being pulled out of the trailer by her ankles. She initially testified that she was not sure who dragged her. The court called a short recess, after which the prosecutor again asked who pulled her out of the trailer. She then testified that defendant did. She remembered hitting her head on the stairs to the trailer as defendant dragged her outside.

¶ 5     Clark further testified that Nicholas Dearborn was outside the trailer. The next thing she knew, defendant and Dearborn were carrying her to the trailer she shared with defendant. Clark was kicking and screaming while defendant and Dearborn carried her. Clark testified that she was thrown inside the trailer. When she tried to leave, defendant flung her against a wall. At some point, defendant and Dearborn left, and Clark returned to Green's trailer. After the incident, Clark

had injuries to her legs, ribs, chest, head, hands, arms, and back. Clark identified several photographic exhibits depicting scrapes and bruises on various parts of her body. The scrapes and bruises were not present before September 25, 2020. Clark testified that one of the photographs showed a clump of missing hair pulled out when she was dragged from Green's trailer.

¶ 6     Kendall County sheriff's deputies Lee Cooper and Jackie Mielke responded to the incident. Cooper testified that Clark appeared intoxicated and did not make much sense when she spoke to him. Clark showed Cooper bruises on one of her legs and her rib cage. Cooper testified on cross-examination that the bruise on Clark's ribcage was not fresh. Cooper testified that Clark had a lot of old bruises on her body. Clark needed assistance walking. Cooper did not notice any patches of hair missing from Clark's head.

¶ 7     Mielke testified that Clark appeared intoxicated. While at the scene, Mielke took photographs of bruising on Clark's entire body. Mielke also observed fresh scratches. On cross-examination, Mielke testified that many of the bruises appeared old.

¶ 8     Dearborn testified for the defense that he was friends with both defendant and Clark. When he observed Clark that evening, she exhibited signs of intoxication. She was having trouble walking and communicating. At some point, defendant asked Dearborn for help bringing Clark home. Dearborn observed Clark stumble out of Green's trailer and fall. Dearborn testified that "[a]fter awhile [he and defendant] picked [Clark] up and brought her back." They carried Clark by her shoulders and her feet back to defendant's and Clark's trailer. Clark was screaming, whining, and wiggling while they carried her. They put her on the master-bedroom bed and "went out to the front of [the] trailer where a party started again." About half an hour later, defendant returned to the trailer to use the bathroom, and Clark was missing. Defendant and Dearborn found Clark back at Green's trailer. Dearborn testified that Clark had injured herself a few days earlier

when she fell off a log and rolled down a hill. Dearborn admitted on cross-examination that he had about 12 beers on September 25, 2020.

¶ 9 In finding defendant not guilty of count I, but guilty of count II, the trial court stated:

"Ms. Clark is not a dog. She is not a pet. She is not a child. If she wants to be at somebody's trailer, she has a right to be at somebody's trailer. And if she does not want to be carried away, she has a right not to be carried away.

\*\*\*

The injuries, the photos that I see are, as stated by everyone, there are a lot of them. But I cannot conclude that they were caused that day as opposed to events occurring previously.

So I will find [defendant] guilty of Count 2, domestic battery of an insulting or provoking nature, and not guilty of the bodily harm count."

¶ 10                                             II. ANALYSIS

¶ 11 Defendant challenges the sufficiency of the evidence to sustain his conviction. A reviewing court will not set aside a criminal conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). When challenging the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and determining what inferences to draw, and a reviewing court ordinarily will not substitute its judgment on these matters for that of the trier of fact. *People v. Cooper*, 194 Ill. 2d 419, 431 (2000).

¶ 12   Section 12-3.2(a)(2) of the Criminal Code of 2012 (720 ILCS 5/12-3.2(a)(2) (West 2020))

provides:

> "(a) A person commits domestic battery if he or she knowingly without legal
>
> justification by any means:
>
> ***
>
> (2) Makes physical contact of an insulting or provoking nature with any family or
>
> household member."

¶ 13   It is undisputed that Clark was a "family or household member," which includes "persons

who have or have had a dating or engagement relationship." *Id.* § 12-0.1.  We have observed that

" '[t]he terms "insulting" and "provoking" are taken from the common law tort of battery, which

requires only an offensive contact—the sort of thing that might provoke a breach of the peace.' "

*People v. Ward*, 2021 IL App (2d) 190243, ¶ 53 (quoting *United States v. Evans*, 576 F.3d 766,

767 (7th Cir. 2009)).  "[T]he trier of fact may take into account the context in which a defendant's

contact occurred to determine whether the touching was insulting or provoking." *People v. Fultz*,

2012 IL App (2d) 101101, ¶ 49.

¶ 14   At the outset, we note that defendant argues that Clark's testimony was not credible due to

her (1) intoxicated condition at the time of the incident, (2) admitted inability to recall certain

events, and (3) "exaggeration of her injuries."  We acknowledge that certain portions of Clark's

testimony are problematic.  For instance, after first testifying that she was unsure who dragged her

out of Green's trailer, she unequivocally testified that it was defendant.  We note, however, that

"[t]he trier of fact is in the best position to view a witness while he or she is being questioned and

may believe as much, or as little, of any witness's testimony as it sees fit." *People v. McCullum*,

386 Ill. App. 3d 495, 504 (2008).  Even if, for the reasons defendant cites, some portions of Clark's

testimony were not credible, we cannot say that the trial court was required to entirely reject her testimony.

¶ 15    Notably, the trial court was entitled to believe Clark's testimony that she was just conversing and watching television with Green in his trailer when defendant and Dearborn came and carried her away by her feet and shoulders.  That the trial court credited this testimony is evident in its statement that "[if Clark] wants to be at somebody's trailer, she has a right to be at somebody's trailer."  Defendant does not suggest that Clark was unwelcome at Green's trailer. Whether Clark was dragged out of Green's trailer or stumbled out of it, it is undisputed that defendant and Dearborn carried her away by her shoulders and feet without her consent.  Defendant concedes that this conduct would have been insulting or provoking if Clark had been sober. However, he argues that his behavior was not insulting or provoking where he "did the responsible thing and tried to get the highly intoxicated Clark back home even against Clark's clouded wishes."

¶ 16    Defendant argues that the State was required to prove that it was his "conscious purpose" to insult or provoke Clark.  Defendant bases this argument on a misunderstanding of the mental state required for a domestic-battery conviction.  Defendant relies on *People v. Craig*, 46 Ill. App. 3d 1058, 1060 (1977), in which the court reversed a battery conviction because it was not the defendant's "conscious objective or purpose *** to accomplish an insulting or provoking physical contact."  Defendant's reliance on *Craig* is misplaced because, during the relevant time frame, the battery statute provided that "[a] person commits battery if he *intentionally* and knowingly without legal justification and by any means, *** makes physical contact of an insulting or provoking nature with an individual."  (Emphasis added.)  Ill. Rev. Stat. 1975, ch. 38, ¶ 12-3(a)(2).  As noted in *Craig*, " 'A person intends, or acts intentionally or with intent, to accomplish a result or engage in conduct described by the statute defining the offense, when his *conscious objective or purpose*

is to accomplish that result or engage in that contact.' " (Emphasis added.) *Craig*, 46 Ill. App. 3d at 1060 (quoting Ill. Rev. Stat. 1975, ch. 38, ¶ 4-4). (In 2011, the legislature removed "intentionally" from the battery statute. See Pub. Act 96-1551, § 5 (eff. July 1, 2011).) By contrast, at the relevant time here, the domestic battery statute did not require an intentional act; it merely required that the offender act "knowingly." See 720 ILCS 5/12-3.2(a) (West 2020). "A person knows, or acts knowingly or with knowledge of *** [t]he result of his or her conduct, described by the statute defining the offense, when he or she is consciously aware that that result is practically certain to be caused by his conduct." 720 ILCS 5/4-5(b) (West 2020).

¶ 17 That is not to say that a defendant's motivation has no bearing on guilt or innocence. Whether particular acts are insulting or provoking depends upon the context in which they occur. In that light, it is certainly arguable that physically carrying a highly intoxicated person from one place to another out of a genuine concern for that person's safety is neither insulting nor provoking. Even though defendant argues that this was the case here, the trial court was not obliged to draw that conclusion from the evidence.

¶ 18 Defendant's core argument stems from the proposition that "[h]uman experience demonstrates that falling-down intoxicated women are safer at home than alone in another man's trailer." That proposition is absurdly broad. With no supporting evidence, defendant asks us to assume that Green, defendant's and Clark's neighbor, was a threat to Clark when they were simply talking and watching television together. We cannot accept that assumption. There is no evidence that Clark was safer in her trailer than in Green's. Indeed, she might have been safer in Green's trailer, where Green could observe any deterioration in her condition or behavior from the alcohol and drug use.

¶ 19    Even if Clark's safety was at issue, the evidence does not establish that carrying her by her feet and shoulders was necessary.  To be sure, both State and defense witnesses testified that Clark had trouble walking, and Dearborn testified that Clark stumbled out of Green's trailer and fell. However, there was no testimony that defendant and Dearborn ever tried to help Clark to her feet. Nor is there evidence that she was unwilling or unable to walk to the trailer with assistance from Dearborn and defendant.  These circumstances severely undermine defendant's effort to depict his conduct as an act of chivalry.  Even if defendant's ultimate objective was laudable, he was not entitled to carry out that objective through insulting and provoking physical contact.

¶ 20    Viewing the evidence in the light most favorable to the State, we cannot say that no rational trier of fact could find the elements of the offense of domestic battery.

¶ 21                                      III. CONCLUSION

¶ 22    For the reasons stated, we affirm the judgment of the circuit court of Kendall County.

¶ 23    Affirmed.